UNITED STATES DISTRICT COURT

DISTRICT OF HAWAIʻI

| | |
|---|---|
| KEIRON B. PRATT, | CIV. NO. 17-00599 DKW-RLP |
| Plaintiff, | |
| vs. | **ORDER GRANTING IN PART MOTION TO DISMISS** |
| STATE OF HAWAII, DEPARTMENT OF PUBLIC SAFETY, DOE DEFENDANTS 1–10, | |
| Defendants. | |

Pratt initiated this state and federal law-based employment discrimination action on December 19, 2017, seeking monetary damages and equitable relief against his former employer, Defendant State of Hawaiʻi, Department of Public Safety ("DPS" or "Department"). *See* Compl., Dkt. No. 1. For the reasons set forth below, the Court GRANTS IN PART the Department's Motion to Dismiss. MTD, Dkt. No. 9. Counts I through V of the Complaint are hereby DISMISSED to the extent they are based on state law. The Count I retaliation claim brought under Title VII is also DISMISSED, insofar as it is based on pre-February 22, 2017 acts of retaliation. Leave to amend is GRANTED with respect to each of Pratt's Title VII-based claims, consistent with the instructions below, and is DENIED in all other respects.

## BACKGROUND

Pratt worked as a Deputy Sheriff for the Department of Public Safety from April 2002 until 2017. *See* Compl. ¶¶ 11, 13, Dkt. No. 1. Initially hired as a "Deputy Sheriff I" (Compl. ¶ 11), Pratt "was promoted to Deputy Sheriff II" in 2003 (Compl. ¶ 12). As a Deputy Sheriff II, Pratt was "assigned to various sections including the Criminal Investigation Unit [('CIU')] of the Sheriff Division as an Investigator" (Compl. ¶ 13). In 2008, Pratt "sought a transfer from warrants to [the] records department" (Compl. ¶ 24); in 2009, he sought a transfer "from the records department to Capitol Patrol" (Compl. ¶ 25); and in 2013, he sought a transfer again, this time to CIU (Compl. ¶ 31).

Pratt states that he has been "open about his homosexuality" since receiving a "homosexual discharge by the military under DD-214" in 1994. Compl. ¶ 15. Although Pratt "did not talk about his homosexuality" in the workplace prior to 2004 (Compl. ¶¶ 17, 18), "[t]he DD-214 . . . was given to" DPS when Pratt was hired, and DPS "placed it in his personnel file with HR" (Compl. ¶ 17). "In 2004, [Pratt] became openly gay at his workplace in the Warrants Division after he was informed by his partner deputy sheriff that everyone at the office, including his supervisors and fellow deputy sheriffs, knew he was gay." Compl. ¶ 18. From that time until 2007, Pratt claims to have been "repeatedly and frequently sexually harassed by fellow deputy sheriffs, who would call him by female-gender names

and scorn and ridicule him and his lack of dating women, and humiliate him by displaying homophobic behavior toward him." Compl. ¶ 20.

In 2008, Pratt filed an administrative complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Hawaiʻi Civil Rights Commission ("HCRC") regarding this harassment. Compl. ¶ 22. Following Pratt's receipt of right-to-sue letters from both the HCRC and the EEOC, Pratt filed suit in state court in 2012, Civil No. 12-1-1409-05 KKS ("2012 Lawsuit"). Compl. ¶ 27; *see* MTD, Ex. 1 [2012 Compl.], Dkt. No. 9-6.[1]

On May 1, 2014, Pratt alleges that he "was again subjected to sex discrimination, [a] sexually hostile work environment, and retaliation by his fellow deputies" in the CIU, "who ridiculed him for his sexual orientation (gay) and stated that [he] was his partner's '10-3', a code used for deputies who are married and are seeing someone on the side." Compl. ¶ 32. DPS also "took [Pratt's] gun away from him in May 2014." Compl. ¶ 34. As a result of these incidents, Pratt filed another Charge of Discrimination, and after receiving a Notice of Dismissal and a right-to-sue letter from the HCRC, Pratt sued DPS again in both state and federal courts. Compl. ¶ 33 (citing *Keiron Pratt v. State of Hawaii, et al.*; Civil No. 15-1-1289-07 JHC (1st Cir. Ct., State of Hawaiʻi); *Keiron Pratt v. State of Hawaii, et al.*, Civil No. 15-00264 HG KSC, 2-1-1409-05 KKS (D. Haw. July 14, 2015)

---

[1]The 2012 Lawsuit was dismissed without prejudice on December 14, 2014. *See* Cook Decl., Ex. 3 [2015 Judgment] at 1–2, Dkt. No. 9-8.

("2015 Lawsuit")); *see* Cook Decl., Ex. 4 [Compl., 1:15-cv-00264-HG-KSC (D. Haw. July 14, 2015)], Dkt. No. 9-9. According to Pratt, the 2015 Lawsuit was "resolved in [his] favor pursuant to a settlement agreement ('the April 2016 Settlement')." Compl. ¶ 35, Dkt. No. 1; Cook Decl., Ex. 5 [Stip. For Dismissal with Prejudice (filed May 5, 2016)], Dkt. No. 9-10 [hereinafter Order Dismissing 2015 Lawsuit].

Pratt alleges that "[a]fter the April 2016 Settlement and because of the suits," DPS subjected him yet again to a "further sexually hostile work environment, sex discrimination, and retaliation." Compl. ¶ 36. Pratt summarizes the facts underlying these alleged wrongdoings in paragraph 36 of the Complaint (*see, infra*, at 5–6), and asserts that these events resulted in another Charge of Discrimination with the HCRC and EEOC on February 22, 2017 ("2017 Charge"). Hernandez Decl., Ex. 6 [2017 Charge], Dkt. No. 9-11 (designated as FEPA No. 19624; EEOC No. 37B-2017-00121).

The HCRC issued Pratt a Notice of Dismissal and a right-to-sue letter on September 26, 2017, and the EEOC did the same on October 16, 2017. Compl. ¶¶ 3–4, Dkt. No. 1. Following his receipt of these notices, Pratt initiated the instant lawsuit on December 19, 2017. Compl. ¶¶ 3–4, Dkt. No. 1.

Pratt asserts five counts against DPS:

1) Retaliation under both the Civil Rights Act of 1964, §§ 701 *et seq.*, 42

4

U.S.C. §§ 2000, *et seq.* ("Title VII") and HEPA, Hawai'i Revised Statutes

("HRS") §§ 378-1 and 378-2 ("Count I"; Compl. ¶¶ 38–41);

2)      Sexually Hostile Work Environment, in violation of both Title VII, 42

U.S.C. §§ 2000, *et seq.*, and HEPA, HRS §§ 378-1 and 378-2 ("Count II"; Compl.

¶¶ 42–45);

3)      Sex Discrimination, in violation of both Title VII, 42 U.S.C. §§ 2000,

*et seq.*, and HEPA, HRS §§ 378-1 and 378-2 ("Count III"; Compl. ¶¶ 46–54);

4)      Retaliation under the Whistleblower's Protection Act, HRS § 378-62

("Count IV"; Compl. ¶¶ 55–58); and

5)      Intentional Infliction of Emotional Distress ("IIED"; "Count V";

Compl. ¶¶ 59–63).

In relevant part, Pratt describes the alleged misconduct underlying these

claims as follows:

a. On September 9, 2016, when it was time for [Pratt]'s annual Employee Performance Appraisal Form, First Deputy Albert Cummings refused to complete it, falsely stating in the form, "Unable to rate in the capacity of a Deputy Sheriff since he has not been assigned to regular duties since July 2014. [sic] Plaintiff had been assigned to regular duties during this time period, for Cummings assigned Plaintiff to investigate and complete at least 40 cases as Deputy Sheriff II from September 2014 through December 2016. Cummings' misrepresentation on the Employee Performance Appraisal form constitutes falsification of an official government document;

b. On December 29, 2016, [DPS] took [Pratt]'s Sheriff's badge away from him, which he was allowed to maintain after [DPS] removed

his gun in May 2014, and he continued to perform his duties as Deputy Sheriff II;

c. On February 17, 2017[,] [DPS] moved [Pratt] out of the Sheriff CIU office into the Hawaii Paroling Authority office, changed his job title from Deputy Sheriff II to Office Assistant III, and demoted him from a Sheriff/Investigator in CIU to a secretary for the Hawaii Paroling Authority, all of which were done against Plaintiff's voluntary consent;

d. In April 2017, [Pratt] was warned by a person in HR that "they retaliated against you."

e. In April 2017, [DPS] transferred [Pratt] out of the Office Assistant job at the Sheriff's Division to the Hawaii Paroling Authority making him Parole Officer III, also without his voluntary consent;

f. In late April 2017, [DPS] coerced or attempted to coerce [Pratt] into signing an agreement withdrawing all grievances and future lawsuits against [DPS], which [Pratt] refused to sign;

g. On June 28, 2017, [DPS] created a fraudulent Performance Appraisal System ("PAS") in which [DPS] falsely reported that [Pratt] had been doing "unsatisfactory work" as Parole Officer III, for [Pratt]'s signature on the PAS was forged, [Pratt] had not been on the job long enough to justify or warrant the PAS, and on December 12, 2017, [Pratt] learned from HR that the June 28, 2017 PAS was never in his personnel file, confirming that the June 28th PAS was fabricated and forged; and

h. On November 22, 2017, three days before Thanksgiving and 15 minutes before [Pratt]'s quitting time, [DPS], by and through [Pratt]'s supervisors, Corey Reincke and Andrew Morgan, blinded-sided [sic] [Pratt] with a notice of unsatisfactory work performance, claiming that his work had been unsatisfactory and that he had three months to bring it up to a satisfactory level, which claim was bogus, fabricated by [DPS] to set [Pratt] up for a termination or to force him to quit, and pretextual, to conceal [DPS]'s discriminatory and retaliatory motive.

Compl. ¶¶ 36(a)–(h), Dkt. No. 1.  As a "direct and proximate result" of this wrongful conduct, Pratt alleges that he has suffered, and continues to suffer, "substantial economic and non-economic damages, including, but not limited to, medical expenses, loss of past and future income, loss of future earning capacity, severe physical manifestations of his medical/mental condition, serious emotional distress, serious mental anguish, loss of quality of life, loss of enjoyment of life, and other related damages."  Compl. ¶ 37.  In its prayer for relief, the Complaint therefore requests "back pay, front pay, compensatory damages, special damages, and general damages, together with costs of suit," and "reasonable attorneys' fees," among other things.  Compl. at 15, Dkt. No. 1.

Before the Court is the Department's January 5, 2018 Motion to Dismiss ("MTD").  MTD, Dkt. No. 9.  Following a hearing on March 16, 2018 (*see* EP, Dkt. No. 14), the Court took matters under advisement.  This disposition follows.

## LEGAL STANDARDS

*Motion to Dismiss for Lack of Subject Matter Jurisdiction*

A court's subject matter jurisdiction may be challenged under Federal Rule of Civil Procedure ("FRCP") 12(b)(1).  The parties may also raise the issue of subject matter jurisdiction at any time under FRCP 12(h)(3), *Augustine v. United States*, 704 F.2d 1074, 1075 n.3 (9th Cir. 1983), and a federal court must generally "satisfy itself of its jurisdiction over the subject matter before it considers the

merits of a case," *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)

(citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998)).  If the

court determines at any time that it lacks subject matter jurisdiction, the court must

dismiss the action.  *Billingsley v. Comm'r of Internal Revenue Serv.*, 868 F.2d

1081, 1085 (9th Cir. 1989) ("[T]he court is under a continuing duty to dismiss an

action whenever it appears that the court lacks jurisdiction." (quoting *Augustine*,

704 F.2d at 1077)).

On a Rule 12(b)(1) motion to dismiss, "the district court is ordinarily free to

hear evidence regarding jurisdiction and to rule on that issue prior to trial,

resolving factual disputes where necessary." *Augustine*, 704 F.2d at 1077 (citing

*Thornhill Publ'g Co. v. Gen. Tel. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)); *see

also McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  Where the

court considers evidence outside the pleadings for this purpose, "[n]o presumptive

truthfulness attaches to plaintiff's allegations, and the existence of disputed

material facts will not preclude the trial court from evaluating for itself the merits

of jurisdictional claims." *Augustine*, 704 F.2d at 1077 (citing *Thornhill*, 594 F.2d

at 733).  "Once the moving party [converts] the motion to dismiss into a factual

motion by presenting affidavits or other evidence properly brought before the

court, the party opposing the motion must furnish affidavits or other evidence

necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage*

*v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003). However, "where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine*, 704 F.2d at 1077 (citing *Thornhill*, 594 F.2d at 733–35; Wright & Miller, Fed. Prac. & Proc. § 1350, at 558)) (explaining further that trial courts making such jurisdictional rulings "should employ the standard applicable to a motion for summary judgment" (citing *Thornhill*, *supra*)).

### Motion to Dismiss for Failure to State a Claim for Relief

The Court may dismiss a complaint under FRCP 12(b)(6) for "failure to state a claim upon which relief can be granted" when there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In other words, a plaintiff is required to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the Court to infer "the mere possibility of misconduct" do not constitute a short and plain statement of the claim showing that the pleader is entitled to relief as required by FRCP 8(a)(2). *Id.* at 677, 679 (explaining that the Federal Rules "do[] not require 'detailed factual allegations,' but [they] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

Courts considering a motion under Rule 12(b)(6) are generally limited to reviewing the contents of the complaint. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment. *See Keams v. Tempe Tech. Inst., Inc.*, 110 F.3d 44, 46 (9th Cir. 1997); *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). Courts may, however, "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Documents whose contents are alleged in a complaint and whose authenticity is not questioned by any party may also be considered in ruling on a

Rule 12(b)(6) motion. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Heartland Payment Sys., Inc. v. Cent. Pac. Bank*, 2012 WL 488107, *2 (D. Haw. Feb. 13, 2012).

For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *See Iqbal*, 556 U.S. at 678 (explaining that the construed-as-true/light-most-favorable tenet "is inapplicable to legal conclusions"); *Sprewell*, 266 F.3d at 988; *see also Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . , a plaintiff's obligation to provide the 'grounds' of his [or her] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Moreover, the court need not accept as true allegations that contradict matters properly subject to judicial notice, nor must it assume that allegations contradicted by the exhibits attached to the complaint are true. *Sprewell*, 266 F.3d at 988. As the Ninth Circuit has explained, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to

require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

*Leave to Amend*

Under Rule 15(a)(2) of the FRCP, leave to amend a party's pleading "should [be] freely give[n] . . . when justice so requires." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (explaining that "the underlying purpose of [FRCP] Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities") (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)). Further, the Ninth Circuit has explained that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citing *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962); *Erlich v. Glasner*, 352 F.2d 119, 122 (9th Cir. 1965)). Nonetheless, leave to amend may be denied for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Mayes v. Leipziger*, 729 F.2d 605, 608 (9th Cir. 1984) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

With these standards in mind, the Court turns to the Department's MTD.

# DISCUSSION

For the reasons set forth below, the Motion to Dismiss (Dkt. No. 9) is GRANTED IN PART. Leave to amend Counts IV, and V of the Complaint (Dkt. No. 1) is DENIED. Leave to amend is GRANTED only with respect to the Title VII-based claims asserted in Counts I, II, and III, as more fully described below.

## I. **Claims Arising Under State Law**

In his Memorandum in Opposition, and at the hearing on the Department's MTD, Pratt conceded that all of his state law-based claims against DPS are subject to Eleventh Amendment immunity. *See, e.g.*, Opp'n at 2, Dkt. No. 12. Accordingly, insofar as Counts I through III allege violations of HRS §§ 378-1 and 378-2, those claims are DISMISSED WITHOUT LEAVE TO AMEND, as are Counts IV and V, which are based solely on state law.

## II. **Title VII Claims**

Pratt's only remaining claims—Retaliation (Count I), Sexually Hostile Work Environment (Count II), and Sex Discrimination (Count III)—each arise under Title VII, and each is discussed below.

### A. *Res Judicata*

The doctrine of *res judicata*, also known as claim preclusion, provides that "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action[.]" *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d

1047, 1051–52 (9th Cir. 2005) (quoting *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997)).  Three elements are necessary to establish res judicata: "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties."  *Id*. at 1052 (quoting *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003)) (citing *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997)).

Here, both the parties and the claim (Title VII) in the 2012 and 2015 Lawsuits are the same as the parties and a portion of the claim in this case, and all allegedly discriminatory acts occurring on or before May 2014—*i.e*., those described in paragraphs 14 through 35 of the Complaint—"were previously litigated and dismissed on the merits."  Mem. in Supp. at 9, Dkt. No. 9-3.  Indeed, the 2012 and 2015 Lawsuits both resulted in a final judgment on the merits.  That is, the state court dismissed Pratt's Title VII action in the 2012 Lawsuit because Pratt failed to exhaust his administrative remedies and/or failed to file a timely complaint after receipt of the right-to-sue notice.  *See* Cook Decl., Ex. 2 [Order Dismissing 2012 Lawsuit] at 3, Dkt. No. 9-7.  As such, the allegations in the First Lawsuit—appearing in similar form in paragraphs 20–29 of the Complaint (*see* Mem. in Supp. at 10)—cannot form the basis of Pratt's Title VII claims in the instant matter.  *See Sommer v. Unum Life Ins. Co. of Am.*, 35 Fed. Appx. 489, 491 (9th Cir. 2002) (noting that dismissal based on failure to exhaust administrative

remedies can be a final judgment for purposes of res judicata); *see also Forsythe v. United States*, 502 Fed. Appx. 689, 690, 692 (9th Cir. 2012). The 2015 Lawsuit was dismissed pursuant to a stipulation for dismissal with prejudice on May 2, 2016 (Order Dismissing 2015 Lawsuit at 2, Dkt. No. 9-10), which constitutes a final judgment on the merits for *res judicata* purposes. *See In re Baker*, 74 F.3d 906, 910 (9th Cir. 1996) (citations omitted); *Headwaters*, 399 F.3d at 1051–52 ("A stipulated dismissal of an action with prejudice in a federal district court generally constitutes a final judgment on the merits and precludes a party from reasserting the same claims in a subsequent action in the same court."). Because the allegations in paragraphs 31, 32, and 34 of the current Complaint were included in the 2015 Lawsuit, they also "cannot form the basis of a Title VII claim [for retaliation] in this case[.]" Pratt, in fact, concedes that he included most of the Title VII allegations in the Complaint (Dkt. No. 1) for background only because they cannot be relitigated, due to their prior dismissals. *See, e.g.*, Opp'n at 3, Dkt. No. 12 ("The allegations in paragraphs 14–35 [of the Complaint] are not an attempt to re-litigate the prior two suits but to set forth the historical events and circumstances leading up to the alleged retaliatory act on December 29, 2016, to show that Defendant's alleged wrongful actions were motivated by Plaintiff's filing of the two suits which were resolved on April 28, 2016.").[2] Thus, the

---

[2] From this comment, it appears that Pratt included these allegations to establish his "protected activity," which

allegations in the 2012 and 2015 Lawsuits cannot form the bases of a Title VII claim in this action, leaving only those allegations in paragraph 36 of the Complaint.

B. ***Exhaustion of Administrative Remedies***

1. *Legal Framework*

Title VII requires a plaintiff to exhaust his or her administrative remedies before filing a civil action against an employer. That is, to bring a Title VII action in federal district court, the plaintiff must, among other things: (1) file a complaint with the EEOC within 300 days of the last alleged unlawful employment practice, *EEOC v. Global Horizons, Inc.*, 904 F. Supp. 2d 1074, 1090 n.2 (D. Haw. 2012) ("The 300-day limitations period is applicable in [Hawaiʻi] because Title VII extends the 180-day period to 300 days if filed in a 'worksharing' jurisdiction.") (citing 42 U.S.C. § 2000e-5(e)(1); 29 C.F.R. § 1601.13(a)(4)(ii)(A); *Stiefel v. Bechtel Corp.*, 624 F.3d 1240, 1244 (9th Cir. 2010)), and (2) timely institute his or her action "within ninety days from the issuance of the right to sue letter by the EEOC," *Valenzuela v. Kraft, Inc.*, 801 F.2d 1170, 1172 (9th Cir. 1986) (citing 42 U.S.C § 2000e-5(f)(1)), *as amended by* 815 F.2d 570 (9th Cir. 1987).

---

forms the basis of Pratt's current retaliation claims. Given that these "background" allegations are not newly reasserted claims (as the right-to-sue notices from the EEOC/HCRC were based on Pratt's *2017* Charge) all that remains of Pratt's Title VII claims are those events described in paragraph 36 of the Complaint.

By fulfilling these exhaustion requirements, the Title VII plaintiff "afford[s] the agency an opportunity to investigate the charge." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002) (citing 42 U.S.C. § 2000e-5(b) (requiring charges to be "in writing under oath or affirmation," and stating that the EEOC "shall serve notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer, employment agency, labor organization, or joint labor-management committee within ten days")), *as amended* (Feb. 20, 2002). The purpose of this administrative charge requirement is twofold—"giving the charged party notice of the claim[3] and 'narrowing the issues for prompt adjudication and decision.'" *B.K.B.*, 276 F.3d at 1099 (brackets omitted) (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)) (additional citations omitted).

EEOC complaints are liberally construed. *B.K.B.*, 276 F.3d at 1103 ("We must keep in mind that complainants filing discrimination charges are acting as laypersons and should not be held to the higher standard of legal pleading by which we would review a civil complaint[.]") (citing *Kaplan v. Int'l Alliance of Theatrical & Stage Emps.*, 525 F.2d 1354, 1359 (9th Cir. 1975), *abrogated on*

---

[3]"[T]he relevant inquiry is not whether the complainant has filed a detailed statement spelling out precisely his objections but whether the actions he did take were 'adequate to put the [agency] on notice.'" *Brown v. Marsh*, 777 F.2d 8, 13, (D.C. Cir. 1985) (quoting *President v. Vance*, 627 F.2d 353, 361 (D.C. Cir. 1980)); *cf. Coleman v. Duke*, 867 F.3d 204, 210 (D.C. Cir. 2017) (stating that the test for determining whether a plaintiff has administratively exhausted his claims of discrimination is whether he "timely provide[d] the [EEOC and HCRC] with 'sufficient information to enable the agency to investigate the claim[s]'" (quoting *Artis v. Bernake*, 630 F.3d 1031, 1034–35 (D.C. Cir. 2011)) (additional citation omitted)).

*other grounds by Laughon v. Int'l Alliance of Theatrical Stage Emps.*, 248 F.3d 931 (9th Cir. 2001); *Green v. Los Angeles Cty. Superintendent of Sch.*, 883 F.2d 1472, 1476 (9th Cir. 1989)), *as amended* (Feb. 20, 2002). Nonetheless, in *B.K.B.*, the Ninth Circuit noted that "[a]llegations of discrimination not included in the plaintiff's administrative charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." 276 F.3d at 1100 (quoting *Green*, 883 F.2d at 1475–76) (internal quotation marks omitted) (citing *Anderson v. Reno*, 190 F.3d 930, 935 (9th Cir. 1999), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir.1990) ("The jurisdictional scope of a Title VII claimant's court action depends upon the scope of both the EEOC charge and the EEOC investigation.")); *cf. Albano v. Schering-Plough Corp.*, 912 F.2d 384, 386 (9th Cir.1990) ("[C]laims regarding incidents not listed in an EEOC charge may nevertheless be asserted in a civil action if they are like or reasonably related to the allegations in the EEOC charge[.]" (quoting another source) (internal quotation marks omitted)). "But if the two claims are not so closely related that a second administrative investigation would be redundant, the EEOC must be allowed to investigate the dispute before the employee may bring a Title VII suit." *Stache v. Int'l Union of Bricklayers & Allied Craftsmen*, 852 F.2d 1231, 1234 (9th Cir.1988) (citing, *inter alia*, *Brown v. Puget Sound Elec.*

*Apprenticeship & Training Trust*, 732 F.2d 726, 730 (9th Cir. 1984)); *cf., e.g.*,

*Sosa*, 920 F.2d at 1457 n.2 ("As we have held, all of [plaintiff]'s allegations are

sufficiently related on their face, making dismissal at this stage of the proceedings

improper.").

> In determining whether a plaintiff has exhausted allegations that
> she did not specify in her administrative charge, it is
> appropriate to consider such factors as the alleged basis of the
> discrimination, dates of discriminatory acts specified within the
> charge, perpetrators of discrimination named in the charge, and
> any locations at which discrimination is alleged to have
> occurred. In addition, the court should consider plaintiff's civil
> claims to be reasonably related to allegations in the charge to
> the extent that those claims are consistent with the plaintiff's
> original theory of the case.

*B.K.B.*, 276 F.3d at 1100 (citing *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th

Cir. 1994) (ruling that plaintiff exhausted her claim for discriminatory layoff since

that claim had always been a part of the plaintiff's theory of the case, as expressed

in her explicit allegations of discriminatory failure to recall and to rehire laid-off

female employees). As such, "[t]he crucial element of a charge of discrimination

is the factual statement contained therein." *Id*. at 1100 (quoting *Sanchez v.*

*Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970)) (citing *Kaplan*, 525 F.2d

at 1359).

### 2. *The 2017 Charge of Discrimination*

Here, the Charge of Discrimination on which Pratt's complaint is based was

filed with the EEOC on February 22, 2017. 2017 Charge, Dkt. No. 9-11. The pre-

printed Charge of Discrimination form directed Pratt to "[c]heck the appropriate box(es)" that describe what the "CAUSE OF DISCRIMINATION [IS] BASED ON," and offered the following choices: "RACE," "COLOR," "SEX," "RELIGION," "NATIONAL ORIGIN/ ANCESTRY," "RETALIATION," "AGE," "DISABILITY," and/or "OTHER (Specify)."  2017 Charge at 1, Dkt. No. 9-11.  Pratt only checked one box on the 2017 Charge—RETALIATION.  2017 Charge at 1, Dkt. No. 9-11.  Additionally, the form asked Pratt to indicate the "DATE DISCRIMINATION TOOK PLACE," and includes a box for plaintiff to check if the discrimination is a "CONTINUING ACTION."  2017 Charge at 1, Dkt. No. 9-11.  Pratt listed "12/19/16" as the "latest" act of discrimination, and he did not check the box indicating that his charge involved a continuing action.  2017 Charge at 1, Dkt. No. 9-11.

As for the factual statement describing the particulars of Pratt's allegations in the 2017 Charge, Pratt wrote:

> I.      During my employment, there have been attempts to take away my badge and commission card, the last incident occurring on or about December 19, 2016.  I was hired in [] April of 2002 as a Deputy Sheriff.
>
> II.      I believe that I am being demoted and forced to turn in my badge and commission card in retaliation for opposing discriminatory treatment.  This is a violation of [HRS], Chapter 378, Part I.  My belief is based on the following:
>
> > A.      During my employment, I have been subjected to discriminatory harassment by another Deputy Sheriff

based on my sex (male) and sexual orientation (homosexual).

B.  On December 21, 2015, I filed a complaint with the [HCRC] against [DPS], alleging that I was subjected to discriminatory harassment.  The state settled out of court.  Since making the above-mentioned complaint, I have been retaliated against by the Director, Sheriff, and 1st Deputy of the Department of Public Safety.

C.  Upon leaving the state in May 2014 for rehabilitation and returning to work in September 2014, my badge and credentials were never taken away or asked to be turned in.

D.  On December 19, 2016, a meeting was scheduled in which I was told that I was going to be job searched. Director Nolan Espinda stated to me that I won my grievance or any other appeal, I would be reinstated with my weapon and badge.  I reminded him that my badge was never taken away from me.

E.  The following day, a meeting was held with the Sheriff, 1st Deputy, and former 1st Deputy Lt. Pat Lee in which Mr. Espinda was asked why my badge had not been taken away.  This is despite the fact that they all knew that I have been investigating cases and have had my badge and police powers.

F.  I believe that I am being demoted in retaliation for my opposing discrimination.

2017 Charge at 1–2, Dkt. No. 9-11.  Thus, although Pratt only checked the box

marked "RETALIATION," signifying the principal theory underlying his claims,

his description of "discriminatory harassment by another Deputy Sheriff based on

my sex (male) and sexual orientation (homosexual)" in the 2017 Charge also

sufficiently identifies Sexually Hostile Work Environment and Sex Discrimination claims for purposes of exhaustion. *See B.K.B.*, 276 F.3d at 1103 ("We must keep in mind that complainants filing discrimination charges are acting as laypersons and should not be held to the higher standard of legal pleading by which we would review a civil complaint[.]" (citing *Kaplan*, 525 F.2d at 1359)); *Green*, 883 F.2d at 1476.

### 3. *Paragraph 36 of the Complaint*

There is no question that Pratt has exhausted his administrative remedies with respect to paragraph 36(b) of the Complaint, in which Pratt alleges that "[o]n December 29, 2016, [DPS] took [Pratt]'s Sheriff's badge away from him which he was allowed to maintain after [DPS] removed his gun in May 2014, and he continued to perform his duties as Deputy Sheriff II[.]" Compl. ¶ 36(b), Dkt. No. 1. The EEOC had an opportunity to investigate the circumstances surrounding this allegation based on the "particulars" Pratt provided in the 2017 Charge, which describe the badge-removal event in greater detail, and the State does not appear to challenge exhaustion as it relates to this particular incident.

The Department, however, argues that Pratt has failed to exhaust his administrative remedies with respect to each of the remaining allegations described in paragraph 36 of the Complaint because each involves a discrete occurrence unrelated to the badge-removal incident. Reply at 6, Dkt. No. 13. Moreover, the

Department argues that, although Pratt filed his 2017 Charge with the EEOC on February 22, 2017, paragraph 36 of the Complaint (Dkt. No. 1) describes several discrete incidents that allegedly occurred *after* that date, and which, DPS asserts, therefore *could not have been exhausted* (*see* Reply at 5–6, Dkt. No. 13).[4] Pratt even concedes that the allegations in paragraphs 36(c) through (h) of the Complaint, in addition to the allegation involving the Annual Employee Performance Appraisal Form on September 9, 2016 raised in paragraph 36(a), "were not brought up in Plaintiff's February 22, 2017, HCRC/EEOC charge." Mem. in Opp'n at 3, Dkt. No. 12.[5] Nonetheless, the Court disagrees that Pratt failed to administratively exhaust his claims based on the allegations described in these sub-paragraphs.

The Court may consider the events described in the remaining portions of paragraph 36 of the Complaint if they are so "like or reasonably related to" the allegations in the 2017 Charge that an EEOC investigation of them "could reasonably be expected to grow out of" the EEOC's investigation. *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 645–46 (9th Cir. 2003) ("Subject matter jurisdiction

[4]Specifically, those incidents relate to: (d) the alleged comment by an HR staff member in April 2017 suggesting that Pratt has a claim for retaliation; (e) Pratt's job-role transfer from Hawaii Paroling Authority Office ("HPA") Assistant to Parole Officer III in April 2017, also allegedly without his consent; (f) the alleged attempt to force Pratt to sign an agreement to withdraw union grievances in April 2017; (g) the alleged "fraudulent" appraisals of Pratt's work performance as Parole Officer III as "unsatisfactory" on June 28, 2017; and (h) the allegedly pretextual notice thereof on November 22, 2017. *See* Reply at 6–7, Dkt. No. 13.

[5]Nor did Pratt amend his 2017 Charge to include these allegations. During the March 16, 2018 hearing, however, Plaintiff's counsel informed the Court that Pratt had recently filed a new Charge of Discrimination with the EEOC with regard to the allegations raised in paragraphs 36(c) through (h) of the Complaint.

extends to all claims of discrimination that fall within the scope of the EEOC's

actual investigation or an EEOC investigation that could reasonably be expected to

grow out of the charge." (citing *B.K.B.*, 276 F.3d at 1100)). A key consideration in

that analysis is whether the remaining claims are "consistent with [Pratt]'s original

theory of the case." *BKB*, 276 F. 3d at 1100 (citing *Farmer Bros. Co.*, 31 F.3d at

899). Here, Pratt's original theory of the case was retaliation. That is the lone

"CAUSE OF DISCRIMINATION" box that he checked on his 2017 Charge, and

that is what his administrative factual statement repeatedly referred to. All of the

post-2017 Charge events described in paragraph 36 represent other ways in which

DPS allegedly retaliated against Pratt—*e.g.* by demoting and transferring him, and

by issuing a negative performance appraisal. As a result, any reasonable

investigation by the EEOC into Pratt's retaliation claim based on the December

2016 badge removal that Pratt undoubtedly exhausted would also have been

expected to result in the EEOC's investigation into these allegedly retaliatory

events as well, all occurring within a few months of each other. Accordingly, the

Court holds that the events described in paragraph 36, regardless of whether they

post-date the 2017 Charge, satisfy the like-or-reasonably-related-to standard. *See,*

*e.g.*, *Sosa*, 920 F.2d at 1457 n.2 ("[The] examination of allegations included in [a

Title VII] complaint which occurred after the filing of [plaintiff's] EEOC charge—

and therefore were not specified in the charge—is the same as [the] examination of

charges occurring before the filing of the charge but not specified in the charge."). Pratt has met his exhaustion obligations.

## C.    *Sufficiency of the Claims*

The Department alleges that even if Pratt exhausted his administrative remedies, all three of the Title VII claims in the Complaint are subject to dismissal under FRCP Rule 12(b)(6).  *See* Mem. in Supp. at 13–18, Dkt. No. 9-3.

### 1.    *Counts II and III*

In the surviving portions of Counts II and III of the Complaint (Dkt. No. 1), Pratt brings Title VII claims for Sexually Hostile Work Environment and Sex Discrimination.  Despite its request for dismissal of these Counts under FRCP 12(b)(6), however, the Department offers no argument or citation supporting *how* either Count II or Count III fails to state a claim for relief.  Accordingly, the Department's request for dismissal of Counts II and III, based on the alleged failure to state a claim, is DENIED.  *See Manzarek*, 519 F.3d at 1031.

### 2.    *Count I*

In the surviving portion of Count I of the Complaint (Dkt. No. 1), Pratt alleges Retaliation under Title VII.  To establish a prima facie case of retaliation against an employee for opposing unlawful discrimination under Title VII, 42 U.S.C. § 2000e-3(a) (2003), the plaintiff must show: "1) that [he] acted to protect [his] Title VII rights; 2) that an adverse employment action was thereafter taken

against [him]; and 3) that a causal link existed between the two events." *McGinest*, 360 F.3d at 1124 (citing *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994), *cert. denied*, 513 U.S. 1082 (1995)).  The Department advances only one argument for dismissal of Count I under Title VII—failure to establish a causal link.  Reply at 8–9, Dkt .No. 13.  While the Court agrees that such causation is absent with respect to paragraphs 36(a), 36(b), and 36(c) of the Complaint, the allegations in paragraphs 36(d) through 36(h) are sufficient to state a claim for Title VII Retaliation.

With regard to the causation element of retaliation under Title VII, the United States Supreme Court "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (concluding that a plaintiff making a retaliation claim under Title VII "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer"); *accord Gallegher v. San Diego Unified Port Dist.*, 668 Fed. Appx. 786, 787 (9th Cir. 2016).  "To show the requisite causal link, the plaintiff must present evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) (citing *Hagans v. Andrus*, 651 F.2d

622, 626 (9th Cir.), *cert. denied*, 454 U.S. 859 (1981); *Meyer v. Cal. & Hawaiian Sugar Co.*, 662 F.2d 637, 639 (9th Cir. 1981)).

"The causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and adverse action." *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011) (citing *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988), *cert. denied sub nom.*, *Jordan v. Hodel*, 488 U.S. 1006 (1989)); *Passantino v. Johnson & Johnson Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000) (explaining that "causation may be established based on the timing of the relevant actions"). Indeed, in some instances, causation can "be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002); *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1094 (9th Cir. 2008) (citation omitted); *see Yonemoto v. McDonald*, 114 F. Supp. 3d 1067, 1104 (D. Haw. 2015) (citing *Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)), *aff'd sub nom.*, *Yonemoto v. Shulkin*, ---Fed. Appx.--- (9th Cir. 2018). But when the adverse employment action occurs a sufficiently long period of time after the protected activity, courts have found the absence of a causal link as a matter of law. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (holding that a court may not infer causation from

temporal proximity unless an employer's knowledge of protected activity and an adverse employment action are "very close" in time); *Stucky v. Haw. Dept. of Educ.*, 2007 WL 602105, *5 (D. Haw. Feb. 15, 2007) ("A temporal distance of several months makes a causal link more difficult to prove; a distance of five years severely undermines it."), *aff'd*, 283 Fed. Appx. 503 (9th Cir. 2008), and *cert. denied*, 555 U.S. 1101 (2009).

Courts have not identified a bright-line rule. *See Jinadasa v. Brigham Young Univ.-Haw*, 2016 WL 6645767, *14 (D. Haw. Nov. 9, 2016) (citing *Coszalter v. City of Salem*, 320 F.3d 968, 977–78 (9th Cir. 2003)). Nonetheless, time ranging from 42 days up to three months has been found sufficient to establish temporal proximity. *E.g.*, *Villiarimo*, 281 F.3d at 1065 (citing *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 505 (9th Cir. 1989) (finding a prima facie case of causation where plaintiffs were discharged from employment 42 and 52 days after the alleged protected activity)); *Yartzoff*, 809 F.2d at 1376 (holding that sufficient evidence existed where adverse actions occurred less than three months after the complaint was filed, two weeks after the charge was first investigated, and less than two months after the investigation ended); *see also Bagley v. Bel-Aire Mech., Inc.*, 647 Fed. Appx. 797, 800 (9th Cir. 2016) (finding that African-American employee-plaintiff made prima facie showing of but-for causation in action alleging retaliatory layoff 36 days after his discrimination complaint

(citations omitted)); *but cf. Fazeli v. Bank of Am., NA*, 525 Fed. Appx. 570, 571

(9th Cir. 2013) (finding that less than three months was insufficient to infer

causation in light of other evidence that no causal link existed). But a lapse of four

or more months has been found to be too long. *E.g.*, *Breeden*, 532 U.S. at 273–74

(holding that an adverse employment action taken 20 months after the protected

conduct "suggests, by itself, no causality at all") (citing *Richmond v. ONEOK, Inc.*,

120 F.3d 205, 209 (10th Cir. 1997) (3-month lapse too long); *Hughes v. Derwinski*,

967 F.2d 1168, 1174–75 (7th Cir. 1992) (4-month lapse too long)); *Brown v. Dep't

of Public Safety*, 446 Fed. Appx. 70, 73 (9th Cir. 2011) (holding that without more,

a 5-month gap between actions was insufficient to infer causation for a retaliation

claim); *Villiarimo*, 281 F.3d at 1065 (holding that an 18-month lapse was

insufficient to infer causation) (citing *Filipovic v. K & R Express Sys., Inc.*, 176

F.3d 390, 398–99 (7th Cir. 1999) (four-month lapse too long); *Adusumilli v. City of

Chicago*, 164 F.3d 353, 363 (7th Cir. 1998) (eight-month lapse too long), *cert.

denied*, 528 U.S. 988 (1999); *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511

(7th Cir. 1998) (five-month lapse too long); *Conner v. Schnuck Markets, Inc.*, 121

F.3d 1390, 1395 (10th Cir. 1997) (four-month lapse too long)); *Yartzoff*, 809 F.2d

at 1376 (holding a 9-month lapse between employee's complaint of discrimination

and an adverse employment action to be insufficient for an inference of causation).[6]

Here, the first three retaliatory actions alleged by Pratt occurred on September 9, 2016, when First Deputy Cummings allegedly made false statements on Pratt's Annual Employee Performance Appraisal Form (Compl. ¶ 36(a)); December 29, 2016, when Director Espinda ordered the removal of Pratt's badge (Compl. ¶ 36(b)); and February 17, 2017, when Pratt was transferred from CIU to HPA without his consent (Compl. ¶ 36(c)). Pratt suggests that these retaliatory actions were in response to his complaints of employment discrimination raised in the 2015 Lawsuit, which was dismissed pursuant to a settlement agreement on April 28, 2016. Order Dismissing 2015 Lawsuit at 2, Dkt. No. 9-10. As such, counsel for Pratt argued at the March 16, 2018 hearing that the time gap between the alleged protected activity on April 28, 2016 and the allegedly retaliatory removal of Pratt's badge on December 29, 2016, for example, is sufficiently narrow to support an inference of prima facie causation. However, the date of Pratt's protected activity is when he *filed* the 2015 Lawsuit (July 14, 2015), not the date that the suit *settled* (April 28, 2016). Thus, the relevant temporal gap is more

---

[6]Pratt provides no support for his contention that "[t]he issue of causation . . . is a question of material fact, which can only be resolved by the trier of fact." Opp'n at 6, Dkt. No. 12.

than 17 months—from July 14, 2015 to December 29, 2016—far greater than even the delays of three and four months that courts have identified as too remote.

Moreover, even if the Court were to assume, *arguendo*, that the temporal gap in this case is the approximately five-month delay advocated by Pratt, the result would be the same. Pratt has failed to present additional evidence sufficient to raise the inference that his protected activity was the likely reason for the alleged misrepresentation on Pratt's annual Employee Performance Appraisal Form (Compl. ¶ 36(a)), the removal of Pratt's badge (Compl. ¶ 36(b)), and the CIU-to-HPA transfer (Compl. ¶ 36(c)). *See generally Serlin v. Alexander Dawson Sch., LLC*, 656 Fed. Appx. 853, 856 (9th Cir. 2016); *Kulukulualani v. Tori Richard, Ltd.*, 2015 WL 4041528, *14 (D. Haw. June 30, 2015) ("Given the more than four month lag between the subject protected activity and her termination, the Court cannot infer causation based on timing alone. Plaintiff must 'rely on additional evidence beyond mere temporal proximity to establish causation.'" (quoting *Conner*, 121 F.3d at 1395)). Accordingly, Pratt cannot establish a prima facie case of retaliation under Title VII with respect to the alleged wrongful acts described in paragraphs 36(a) through (c) of the Complaint, each of which is too temporally remote from the July 14, 2015 filing of Pratt's 2015 Lawsuit.

Were there no other protected activity, then the other allegations in paragraph 36 of the Complaint would also be too temporally disconnected and

remote, coming even later in time than the allegations in paragraph 36(a) through (c). However, under Pratt's central theory—that the Department retaliated against him for complaining about a sexually hostile work environment and sex discrimination—Pratt's February 22, 2017 filing of the 2017 Charge represents renewed protected activity. In light of this filing date, paragraphs 36(d) through (h) of the Complaint (Dkt. No. 1)—which describe alleged incidents occurring in April 2017 (Compl. ¶¶ 36(d)–(f)), on June 28, 2017 (Compl. ¶ 36(g)), and on November 22, 2017 (Compl. ¶ 36(h))—are not too remote to establish a pattern of alleged wrongdoings sufficient to support a prima facie claim for Title VII retaliation.

Accordingly, Count I for Retaliation under Title VII is DISMISSED insofar as it is grounded in the allegations described in sub-paragraphs 36(a), 36(b), and 36(c) of the Complaint (Dkt. No. 1), but it survives dismissal insofar as the allegations in sub-paragraphs 36(d) through (h) are concerned.

III.     **Leave to Amend**

Under FRCP 15(a)(2), once a responsive pleading has been filed, a party "may amend its pleading only with the opposing party's written consent or the court's leave," which should be given "freely . . . when justice so requires." *See Joy v. Hawaiʻi*, 2008 WL 4483798, *2 (D. Haw. Sept. 26, 2008) ("[T]he underlying purpose of Rule 15(a) . . . was to facilitate decisions on the merits,

rather than on technicalities or pleadings.") (quoting *In re Morris*, 363 F.3d 891,

894 (9th Cir. 2004)). "Courts may decline to grant leave to amend only if there is

strong evidence of 'undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments previously allowed,

undue prejudice to the opposing party by virtue of allowance of the amendment, or

futility of amendment, etc.'" *Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty.*,

708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman*, 371 U.S. at 182) (some

brackets omitted); *Finazzo v. Hawaiian Airlines*, 2007 WL 1080095, *5 (D. Haw.

Apr. 6, 2007) (citing *Foman*, *supra*). "Where there is lack of prejudice to the

opposing party and the amended complaint is obviously not frivolous, or made as a

dilatory maneuver in bad faith, it is an abuse of discretion to deny such a motion."

*Howey v. United States*, 481 F.2d 1187, 1191 (9th Cir. 1973).

Here, although Pratt did not request leave to amend in his briefing on the

MTD, his counsel did request leave to amend Counts I, II and III during the March

16, 2018 hearing. Any amendment would be the first to Pratt's December 19, 2017

Complaint (Dkt. No. 1), and there is no evidence before the Court that Pratt's

filings represent "a dilatory maneuver in bad faith." *Howey*, 481 F.2d at 1191.

Moreover, permitting amendment would not "produce an undue delay in litigation"

where discovery has yet to begin, and, in fact, the Rule 16 scheduling conference

before the Magistrate Judge is still two weeks away (*see* EO, Dkt. No. 11 (setting

Rule 16 conference for April 24, 2018)).  Nor has the Department shown or even

argued that it will be prejudiced by allowing an amendment.  *Jackson v. Bank of*

*Haw.*, 902 F.2d 1385, 1387–88 (9th Cir. 1990); *cf. Hurn v. Ret. Fund Tr. of*

*Plumbing*, 648 F.2d 1252, 1254 (9th Cir. 1981) ("The delay [a]ffected by

permitting an amendment to the complaint cannot alone justify the denial of leave

to amend.").

The only potential obstacle to amendment is futility.  *See Cook, Perkiss &*

*Liehe*, 911 F.2d at 247 ("[A] district court should grant leave to amend even if no

request to amend the pleading was made, unless it determines that the pleading

could not possibly be cured by the allegation of other facts." (citing *Bonanno*, 309

F.2d at 322; *Erlich*, 352 F.2d at 122)).  *See generally Bonin v. Calderon*, 59 F.3d

815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of

a motion for leave to amend.").  Amendment is futile where the proposed claims

are duplicative of existing claims, patently frivolous, and/or legally insufficient.

*See Miller v. Rykoff-Sexton*, 845 F.2d 209, 214 (9th Cir. 1988) ("[A] proposed

amendment is futile only if no set of facts can be proved . . . that would constitute a

valid and sufficient claim."), *abrogated by Iqbal*, 556 U.S. at 678 (proper pleading

standard is now plausibility).

In the instant case, the Court has determined that the state law claims

asserted in Counts I (Retaliation under HRS §§ 378-1 and 378-2), II (Hostile Work

Environment under HRS §§ 378-1 and 378-2), III (Sex Discrimination under HRS §§ 378-1 and 378-2), IV (Whistleblower's Protection HRS § 378-62), and V (Intentional Infliction of Emotional Distress) are barred by immunity. Accordingly, amendment of these claims would be futile. Leave to amend is DENIED with respect to Counts IV and V in their entirety, and with respect to the state law portions of Counts I, II, and III. *See Bonin*, 59 F.3d at 845. Leave to amend is GRANTED with respect to each of Pratt's Title VII-based claims, except to the extent they are based on events found herein to be barred by res judicata or otherwise legally insufficient (*e.g.*, as with paragraphs 36(a) through (c)).

Any amended complaint must designate itself as the "First Amended Complaint" and may not incorporate any part of the original Complaint (Dkt. No. 1); rather, any specific allegations must be re-written in their entirety. *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled in unrelated part by Lacey v. Maricopa Cty.*, 693 F.3d 896, 927–28 (9th Cir. 2012) (en banc). The filing deadline for such an amended complaint is 30 days from the date of this order. Failure to file an amended complaint consistent with the guidance provided by this Order will result in the dismissal of this action with prejudice.

## CONCLUSION

Pursuant to the foregoing discussion, the Court hereby GRANTS IN PART Defendants' Motion to Dismiss (Dkt. No. 9). Counts I through V of the Complaint

(Dkt. No. 1) are DISMISSED IN PART. Because amendment of the state law claims asserted in Count I (Retaliation), II (Hostile Work Environment), III (Sex Discrimination), IV (Whistleblower's Protection), and V (IIED) would be futile, leave to amend those claims is DENIED. Leave to amend the Title VII-based portions of Counts I, II, and III, however, is GRANTED, consistent with the terms of this Order.

IT IS SO ORDERED.

DATED: April 9, 2018 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

*Pratt v. State Of Hawaiʻi, Department Of Public Safety, Doe Defendants 1-10,*
CIV. NO. 17-00599 DKW-RLP; **ORDER GRANTING IN PART MOTION TO DISMISS**

36