UNITED STATES DISTRICT COURT

DISTRICT OF HAWAI‘I

| | |
|---|---|
| KEIRON B. PRATT,<br><br>                 Plaintiff,<br><br>  vs.<br><br>STATE OF HAWAII, DEPARTMENT<br>OF PUBLIC SAFETY, DOE<br>DEFENDANTS 1–10,<br><br>                Defendants. | CIV. NO. 17-00599 DKW-RLP<br><br><br>**ORDER GRANTING IN PART<br>MOTION FOR JUDGMENT ON<br>THE PLEADINGS** |

Pratt initiated a state and federal law-based employment discrimination

action on December 19, 2017, seeking monetary damages and equitable relief

against his former employer, Defendant State of Hawai‘i, Department of Public

Safety ("DPS" or "Department"). *See* Compl., Dkt. No. 1. Following this Court's

Order granting in part the Department's Motion to Dismiss, with leave to amend,

on May 8, 2018, Pratt filed a First Amended Complaint ("FAC") based exclusively

on federal employment discrimination claims. FAC, Dkt. No. 18. The Department

subsequently filed a Motion for Judgment on the Pleadings ("MJOP"). Dkt.

No. 24. For the reasons set forth below, the Court GRANTS IN PART the

Department's MJOP. Counts I through III of the FAC are hereby DISMISSED

without prejudice. Leave to amend is GRANTED with respect to Pratt's

retaliation, hostile work environment, and sex discrimination claims, consistent with the instructions below.

## BACKGROUND

Pratt worked as a Deputy Sheriff for the Department of Public Safety from April 2002 until 2017. *See* FAC ¶¶ 11, 13, Dkt. No. 18. Initially hired as a "Deputy Sheriff I" (FAC ¶ 11), Pratt "was promoted to Deputy Sheriff II" in 2003 (FAC ¶ 12). As a Deputy Sheriff II, Pratt was "assigned to various sections including the Criminal Investigation Unit [('CIU')] of the Sheriff Division as an Investigator" (FAC ¶ 13). In 2008, Pratt "sought a transfer from warrants to [the] records department" (FAC ¶ 24); in 2009, he sought a transfer "from the records department to Capitol Patrol" (FAC ¶ 25); and in 2013, he sought a transfer again, this time to CIU (FAC ¶ 31).

Pratt states that he has been "open about his homosexuality" since receiving a "homosexual discharge by the military under DD-214" in 1994. FAC ¶ 15. Although Pratt "did not talk about his homosexuality" in the workplace prior to 2004 (FAC ¶¶ 17, 18), "[t]he DD-214 . . . was given to" DPS when Pratt was hired, and DPS "placed it in his personnel file with HR" (FAC ¶ 17). "In 2004, [Pratt] became openly gay at his workplace in the Warrants Division after he was informed by his partner deputy sheriff that everyone at the office, including his supervisors and fellow deputy sheriffs, knew he was gay." FAC ¶ 18. From that

time until 2007, Pratt claims to have been "repeatedly and frequently sexually harassed by fellow deputy sheriffs, who would call him by female-gender names and scorn and ridicule him and his lack of dating women, and humiliate him by displaying homophobic behavior toward him." FAC ¶ 20.

In 2008, Pratt filed an administrative complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Hawaiʻi Civil Rights Commission ("HCRC") regarding this harassment. FAC ¶ 21. Following Pratt's receipt of right-to-sue letters from both the HCRC and the EEOC, Pratt filed suit in state court in 2012, Civil No. 12-1-1409-05 KKS ("2012 Lawsuit"). FAC ¶ 27.[1]

On May 1, 2014, Pratt alleges that he "was again subjected to sex discrimination, [a] sexually hostile work environment, and retaliation by his fellow deputies" in the CIU, "who ridiculed him for his sexual orientation (gay) and stated that [he] was his partner's '10-3', a code used for deputies who are married and are seeing someone on the side." FAC ¶ 26. As a result of these incidents, Pratt filed another Charge of Discrimination, and after receiving a right-to-sue letter from the HCRC, Pratt sued DPS again in both state and federal courts. FAC ¶ 33 (citing *Keiron Pratt v. State of Hawaii, et al.*; Civil No. 15-1-1289-07 JHC (1st Cir. Ct., State of Hawaiʻi); *Keiron Pratt v. State of Hawaii, et al.*, Civil No. 15-00264 HG

---

[1]The 2012 Lawsuit was dismissed without prejudice on December 14, 2014. *See* Cook Decl., Ex. 3 [2015 Judgment] at 1–2, Dkt. No. 9-8.

KSC (D. Haw. July 14, 2015) ("2015 Lawsuit")); *see* Cook Decl., Ex. 4, Dkt. No. 9-9.  According to Pratt, the 2015 Lawsuit was "resolved in [his] favor pursuant to a settlement agreement ('the April 2016 Settlement')."  FAC ¶ 29.

Pratt alleges that after the April 2016 Settlement, DPS subjected him yet again to a "further sexually hostile work environment, sex discrimination, and retaliation."  FAC ¶ 30.  Pratt summarizes the facts underlying these alleged wrongdoings in paragraph 31 and 33 of the FAC, and asserts that these events resulted in another Charge of Discrimination with the HCRC and EEOC on February 22, 2017 ("2017 Charge").  FAC ¶ 31.

The HCRC issued Pratt a right-to-sue letter on September 26, 2017, and the EEOC did the same on October 16, 2017.  FAC ¶¶ 3–4, Dkt. No. 18.  Pratt then initiated the instant lawsuit on December 19, 2017.  FAC ¶¶ 3–4, Dkt. No. 1.

The Department subsequently filed a Motion to Dismiss in Lieu of an Answer, arguing *inter alia* that several of plaintiff's claims were barred under *res judicata* and failed to state a claim for which relief could be granted.  Motion to Dismiss, Dkt. No. 9. The Court granted the Motion to Dismiss without leave to amend with respect to all state-law claims previously adjudicated in the 2012 and 2015 Lawsuits.  The Court granted plaintiff leave to amend with respect to all claims under Title VII.

On May 8, 2018, in accordance with the Court's April 2018 Order, Pratt

filed a First Amended Complaint.  On May 10, 2018, Defendant filed an Answer.

Dkt. No. 20.  In the FAC, Pratt asserts three causes of action against DPS:

1) Retaliation under the Civil Rights Act of 1964, 42 U.S.C. §§ 2000, *et seq.* ("Title VII") ("Count I"; FAC ¶¶ 35–38);

2) Sexually Hostile Work Environment, in violation of Title VII, ("Count II"; FAC ¶¶ 39–42); and

3) Sex Discrimination, in violation of Title VII, ("Count III"; FAC ¶¶ 43–49).

In relevant part, Pratt describes the alleged misconduct underlying these

Counts as follows:

a. In April 2017, [Pratt] was warned by a person in HR that "they retaliated against you."

b. In April 2017, [DPS] transferred [Pratt] out of the Office Assistant job at the Sheriff's Division to the Hawaii Paroling Authority making him Parole Officer III, also without his voluntary consent;

c. In late April 2017, [DPS] coerced or attempted to coerce [Pratt] into signing an agreement withdrawing all grievances and future lawsuits against [DPS], which [Pratt] refused to sign;

d. On June 28, 2017, [DPS] created a fraudulent Performance Appraisal System ("PAS") in which [DPS] falsely reported that [Pratt] had been doing "unsatisfactory work" as Parole Officer III, for [Pratt]'s signature on the PAS was forged, [Pratt] had not been on the job long enough to justify or warrant the PAS, and on December 12, 2017, [Pratt] learned from HR that the June 28, 2017 PAS was never in his personnel file, confirming that the June 28th PAS was fabricated and forged;

e. On November 22, 2017, three days before Thanksgiving and 15 minutes before [Pratt]'s quitting time, [DPS], by and through [Pratt]'s supervisors, Corey Reincke and Andrew Morgan, blinded-sided [sic] [Pratt] with a notice of unsatisfactory work performance, claiming that his work had been unsatisfactory and that he had three months to bring it up to a satisfactory level, which claim was bogus, fabricated by [DPS] to set [Pratt] up for a termination or to force him to quit, and pretextual, to conceal [DPS]'s discriminatory and retaliatory motive.

f. On March 1, 2018, [DPS], served [Pratt] with a cease-and-desist letter from [chairman Hyun], dated February 28, 2018, which demanded that the Plaintiff cease and desist from using his work email account to send emails to his fellow coworkers in the department to lobby for support of a [legislative bill]… [The letter] is the first of its kind in the history of PSD as many other employees have used their work email account for non-work related purposes, and none of them were slapped with a cease and desist letter;

i. On March 14, 2018, [the Administrator] of the Hawaii Paroling Authority, wrote a letter to Plaintiff falsely accusing him of lying about being sick. In his letter [the Administrator] stated, "this is to notify you that you are a possible witness and/or under investigation as to allegations of violation(s) listed below . . . the complaint alleges the following: [Pratt], lied and misrepresented that he was out on sick leave on February 28, 2018 . . . Pratt's union representative told Plaintiff that no employee in the history of PSD had ever received a complaint accusing them of lying and misrepresenting when taking sick leave.

FAC ¶¶ 33(a)–(i), Dkt. No.18.

Counts II and III (but not Count I) are also supported by the following

allegations:

a. On September 9, 2016, when it was time for [Pratt]'s annual Employee Performance Appraisal Form, First Deputy Albert Cummings refused to complete it, falsely stating in the form,

"Unable to rate in the capacity of a Deputy Sheriff since he has not been assigned to regular duties since July 2014. [sic] Plaintiff had been assigned to regular duties during this time period, for Cummings assigned Plaintiff to investigate and complete at least 40 cases as Deputy Sheriff II from September 2014 through December 2016. Cummings' misrepresentation on the Employee Performance Appraisal form constitutes falsification of an official government document;

b. On December 29, 2016, [DPS] took [Pratt]'s Sheriff's badge away from him, which he was allowed to maintain after [DPS] removed his gun in May 2014, and he continued to perform his duties as Deputy Sheriff II;

c. On February 17, 2017[,] [DPS] moved [Pratt] out of the Sheriff CIU office into the Hawaii Paroling Authority office, changed his job title from Deputy Sheriff II to Office Assistant III, and demoted him from a Sheriff/Investigator in CIU to a secretary for the Hawaii Paroling Authority, all of which were done against Plaintiff's voluntary consent.

FAC ¶¶ 31(a)–(c).

As a "direct and proximate result" of this wrongful conduct, Pratt alleges that he has suffered, and continues to suffer, "substantial economic and non-economic damages, including, but not limited to, medical expenses, loss of past and future income, loss of future earning capacity, severe physical manifestations of his medical/mental condition, serious emotional distress, serious mental anguish, loss of quality of life, loss of enjoyment of life, and other related damages." FAC ¶ 34. In its prayer for relief, the FAC therefore requests "back pay, front pay, compensatory damages, special damages, and general damages,

together with costs of suit," and "reasonable attorneys' fees," among other things. FAC ¶¶ 32, 42, 49.

In its Answer, the Department admits to some of the facts alleged, but denies any wrongdoing, relying on several defenses, including that the FAC fails to state a claim upon which relief can be granted, Plaintiff failed to exhaust administrative remedies, and that the actions taken by DPS were in good-faith and for non-discriminatory reasons. Answer, Dkt. No. 20 ¶¶ 19-23.

Before the Court is the Department's August 3, 2018 MJOP. Following a hearing on October 12, 2018 (*see* EP, Dkt. No. 30), the Court took matters under advisement. This disposition follows.

## LEGAL STANDARDS

*Motion for Judgment on the Pleadings for Failure to State a Claim for Relief*

The Court may enter judgment on the pleadings under Rule 12(c), "after the pleadings are closed—but early enough not to delay trial." For a Rule 12(c) motion, the allegations of the nonmoving party are accepted as true, while the allegations of the moving party that have been denied are assumed to be false. *See Hal Roach Studios v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1550 (9th Cir. 1989). A court evaluating a Rule 12(c) motion must construe factual allegations in a complaint in the light most favorable to the nonmoving party. *Fleming v. Pickard,* 581 F.3d 922, 925 (9th Cir. 2009). "Judgment on the pleadings under

Rule 12(c) is proper when the moving party establishes on the face of the pleadings that there is no material issue of fact and that the moving party is entitled to judgment as a matter of law." *Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.,* 644 F.3d 934, 937 n. 1 (9th Cir. 2011).

The standard governing a Rule 12(c) motion for judgment on the pleadings is "functionally identical" to that governing a Rule 12(b)(6) motion. *United States ex rel. Caffaso v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). The Court may dismiss a complaint under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted" when there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In other words, a plaintiff is required to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Factual allegations that only permit the Court to infer "the mere possibility of misconduct" do not constitute a short and plain statement of the claim showing that the pleader is entitled to relief as required by Fed.R.Civ.P. 8(a)(2). *Id.* at 677, 679 (explaining that the Federal Rules "do[] not require 'detailed factual allegations,' but [they] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *See Iqbal*, 556 U.S. at 678 (explaining that the construed-as-true/light-most-favorable tenet "is inapplicable to legal conclusions"); *Sprewell*, 266 F.3d at 988; *see also Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . , a plaintiff's obligation to provide the 'grounds' of his [or her] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Moreover, the court need not accept as true allegations that contradict matters properly subject to judicial notice, nor must it assume that allegations contradicted by the exhibits attached to the complaint are true. *Sprewell*, 266 F.3d at 988. As the Ninth Circuit has explained, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be

subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## Leave to Amend

Under Fed.R.Civ.P. 15(a)(2), leave to amend a party's pleading "should [be] freely give[n] . . . when justice so requires." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (explaining that "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities") (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)). Further, the Ninth Circuit has explained that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citing *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962); *Erlich v. Glasner*, 352 F.2d 119, 122 (9th Cir. 1965)). Nonetheless, leave to amend may be denied for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Mayes v. Leipziger*, 729 F.2d 605, 608 (9th Cir. 1984) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

With these standards in mind, the Court turns to the Department's MJOP.

11

## **DISCUSSION**

Pratt's claims for retaliation (Count I), sexually hostile work environment (Count II), and sex discrimination (Count III) each arise under Title VII. Each claim is dismissed *without prejudice,* with limited leave to amend, as more fully described below.

## I. **Count I: Retaliation**

Pratt alleges that the Department unlawfully retaliated against him for filing his February 2017 EEOC Charge of Discrimination, which constitutes protected activity under Title VII. FAC ¶ 37. The factual allegations in support of this cause of action are found in paragraph 33 of the FAC.[2] *Id.*

The Department contends that Pratt's retaliation claim should be dismissed either: (1) on jurisdictional grounds, for failure to exhaust administrative remedies with respect to the new allegations in the FAC that post-date Pratt's original December 2017 Complaint (found in paragraphs 33(f)-(i)); or (2) for failure to state a claim upon which relief can be granted, with respect to all allegations (found in paragraphs 33(a)-(i)).[3] The Department argues that Pratt fails to state a

---

[2]The FAC does not specify which of the allegations are made in support of which cause of action. Accordingly, the Court treats each allegation as if it were made in support of each of the three causes of action.

[3]There are several additional acts of retaliation alleged in paragraph 31 of the FAC. The Department argues, and the Court agrees, that the Court's April 9, 2018 Order disposed of these very same allegations, holding that the events now alleged in paragraph 31 (which occurred between September 2016 and February 2017) were too temporally remote from Pratt's protected activity, in the form of his July 2015 Lawsuit, to be causally related to those acts. Because those

claim because each allegation either does not amount to an "adverse employment action" or is not causally related to his February 2017 protected activity.

## A.    *Legal Framework*

To establish a prima facie claim of retaliation, a plaintiff must show that "1) he acted to protect [his] Title VII rights; 2) an adverse employment action was thereafter taken against [him]; and 3) that a causal link existed between the two events." *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004) (citing *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994), *cert. denied*, 513 U.S. 1082 (1995)).

### 1.    *Adverse Employment Action*

For retaliation purposes, an action is "cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000). An adverse employment action does not need to be a final or ultimate employment action, such as hiring, firing or demotion, nor does it need to "materially affect the terms and conditions of employment." *Id.* In that sense, an adverse employment action is more broadly construed in the retaliation context than when alleged in support of a discrimination claim. *Burlington N. Santa Fe Rwy Co. v. White,* 546 U.S. 53, 60–

---

acts pre-dated the February 2017 protected activity now relied on by Pratt, they similarly could not support the retaliation cause of action alleged here. The Court therefore considers only those factual allegations of retaliation alleged in paragraph 33 of the FAC.

63 (2006) (recognizing that the anti-retaliation provisions of Title VII, unlike the substantive provisions, are not limited to actions that affect the terms and conditions of employment and defining adverse employment action for purposes of retaliation claims as an action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination.").  For instance, the Ninth Circuit has recognized lateral transfers, unfavorable references, and a more burdensome work schedule as adverse employment actions for purposes of retaliation.  *Ray,* 217 F.3d at 1243 (citations omitted).

   2.   *Causation*

According to the United States Supreme Court, establishing causation for a retaliation claim "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (concluding that a plaintiff making a retaliation claim under Title VII "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer"); *accord Gallagher v. San Diego Unified Port Dist.*, 668 Fed. Appx. 786, 787 (9th Cir. 2016).  "To show the requisite causal link, the plaintiff must present evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action."  *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) (citing *Hagans v. Andrus*, 651 F.2d

622, 626 (9th Cir.), *cert. denied*, 454 U.S. 859 (1981); *Meyer v. Cal. & Hawaiian Sugar Co.*, 662 F.2d 637, 639 (9th Cir. 1981)).

### B.   Discussion

Every event alleged in paragraphs 33(a)-(i) in support of Pratt's retaliation claim fails prong two and/or three of the *McGinest* framework.  For this reason, the Court GRANTS the Department's MJOP with respect to Count I.  However, *some* of these events are amenable to amendment, and the Court accordingly GRANTS leave, consistent with the guidance that follows.

Paragraph 33(a) alleges that in April 2017, two months after Pratt filed his February 2017 EEOC Charge, "someone in the HR department" informed Pratt that the Department was retaliating against him.  This fact, even if true, is not an adverse employment action.  Whatever the Department was doing certainly could have been retaliatory, but simply being informed of that fact by what appears to be a peer, and potentially a witness, is not.  *See e.g. Ray*, 217 F.3d at 1243 ("the EEOC test [for adverse action in retaliation cases]…does not cover every offensive utterance by co-workers, because offensive statements by co-workers do not reasonably deter employees from engaging in protected activity.")  Indeed, on its face, the statement is not even plausibly offensive.  DPS' motion with respect to this allegation is GRANTED without leave to amend.

Paragraph 33(b) alleges that Pratt was transferred from his position as an Office Assistant in the Sheriff's Department to a Parole Officer in the Hawaii Paroling Authority without his consent. The Court does not agree, as the Department suggests, that such a transfer cannot constitute an adverse employment action, unless the transfer was "a demotion." The Ninth Circuit has made that abundantly clear. *St. John v. Employment Development Dept.,* 642 F.2d 273, 274 (9th Cir.1981) (holding that a transfer to another job of the same pay and status may constitute an adverse employment action.) But whether the instant transfer amounts to such an adverse action depends on facts that are nowhere plead in the FAC. We do not know, for instance, if the instant transfer was a demotion, or resulted in a loss of salary or benefits, in the manner that the Department posits is necessary. Nor do we know if the transfer changed Pratt's responsibilities or conditions of employment, affected his promotion potential, limited his training or travel opportunities, or amounted to administrative banishment or segregation, each of which "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Sillars v. Nevada*, 385 Fed. Appx. 669, 671 (9th Cir. 2010) *(*citing *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006)); *Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir.1987) ("[t]ransfers of job duties…if proven, would constitute 'adverse employment decisions.'"); *see also*, *Cooper v. Southern California Edison Co*., 170 Fed. Appx.

496, 498 (9th Cir. 2006) (affirming summary judgment for defendant where plaintiff "presented insufficient evidence that [the transfer] resulted in a decrease in workload or promotion opportunities.").   Even in reply, Pratt states only generally that all of the allegations "would certainly dissuade Pratt from further pursuing his Title VII retaliation claim."   This conclusory statement is insufficient to carry his prima facie burden.

With regard to causation, the third prong of the *McGinest* inquiry, the Ninth Circuit allows that a "causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and adverse action."   *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011) (citing *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988), *cert. denied sub nom.*, *Jordan v. Hodel*, 488 U.S. 1006 (1989)).   In some instances, causation can "be inferred from timing alone where an adverse employment action follows on the heels of protected activity."   *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002).   Time ranging from 42 days up to three months has been found sufficient to establish temporal proximity.   *See, e.g.*, *Villiarimo*, 281 F.3d at 1065 (citing *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 505 (9th Cir. 1989) (finding prima facie case of causation where plaintiffs were discharged from employment 42 and 52 days after the alleged protected activity)); *Yartzoff*, 809 F.2d at 1376 (holding that sufficient evidence existed

where adverse actions occurred less than three months after the complaint was filed, two weeks after the charge was first investigated, and less than two months after the investigation ended).

Here, Pratt's alleged transfer occurred in April 2017, two months after the filing of the EEOC Charge. Given this temporal proximity to his protected activity, Pratt has successfully raised a rebuttable inference that his protected activity was the cause of his transfer.

Although Pratt's transfer allegations are sufficient to establish both causation and what *could be* an adverse employment action, without more, the Court cannot determine whether or not the transfer was of the type that would be considered an adverse action for the purposes of retaliation. The Court therefore GRANTS the Department's Motion with respect to this allegation, albeit with leave to amend.

Paragraph 33(c) alleges that the Department sought to coerce Pratt into signing a settlement agreement dismissing his Title VII claims by threatening that Pratt would be removed from his position if he failed to sign the agreement. According to the FAC, "the Settlement Agreement called for Plaintiff to submit a notice of withdrawal [of state law discrimination claims] . . . [I]f Plaintiff failed to satisfy the Conditions by April 17, 2017, Employer would remove him from the Parole Officer III position and return him to his Office Assistant position . . . " It is difficult to see how such actions by the Department could amount to an adverse

employment action where Pratt concedes that the supposed settlement agreement was never signed, and no claims were ever withdrawn. *Cf. Lewis v. United Parcel Serv., Inc.,* 252 Fed. App'x 806, 807–08 (9th Cir. 2007) (holding that plaintiff did not suffer an adverse employment action in a religious discrimination case because plaintiff's claim was based on the fact that his superior threatened to fire him if he did not comply with the employer's grooming policy within one week, but the threat was never carried out and plaintiff was not demoted, fired, or otherwise disciplined.); *Helmann v. Weisberg,* 360 Fed.Appx. 776, 778 (9th Cir. 2009) (employer's threat to fire and prosecute employee in retaliation for participation in co-worker's discrimination complaint was not adverse employment action because the employer's conduct was a "mere threat"); *Nunez v. City of Los Angeles,* 147 F.3d 867, 875 (9th Cir.1998) (explaining that "[m]ere threats and harsh words are insufficient" to establish an adverse employment action in a First Amendment retaliation case). As a result, the Department's Motion is GRANTED with respect to this allegation and leave to amend is DENIED.[4]

Paragraph 33(d) alleges what appears to be an unsatisfactory performance appraisal. The FAC is unclear as to what exactly occurred, but Pratt states that "on

---

[4]Because Pratt cannot establish that this allegation constitutes an adverse employment action, the Court does not address causation, except to note that it already has. *See* April 2018 Order at 32 ("in light of [the February 2017 EEOC Charge…,] alleged incidents occurring in April 2017, June 28, 2017, and November 22, 2017 . . . are not too remote to establish a pattern of alleged wrongdoings sufficient to support a prima facie claim for Title VII retaliation.").

June 28, 2017, Employer created a fraudulent Performance Appraisal System . . .

in which Employer falsely reported that Plaintiff had been doing 'unsatisfactory

work', for Plaintiff's signature on the PAS was forged . . . Plaintiff learned from

HR that [the performance appraisal] . . . was never in his personnel file . . . "

Undeserved performance ratings may constitute adverse employment actions.

*See Ray,* 217 F.3d at 1241. However, whether or not a performance evaluation

constitutes an adverse employment action depends on whether the performance

evaluation is final, is entered in to the employee's file, and is widely distributed,

among other factors. Here, Pratt's recitation of facts is unclear as to what took

place: it is unclear whether the employer created a fraudulent performance

*appraisal* or a fraudulent performance *appraisal system*; whether the performance

appraisal (assuming it was an appraisal) was finalized and filed; and whether the

performance appraisal remains in Pratt's record. Based on Pratt's allegation, it

appears that the performance evaluation may have been shown to Pratt in June

2017 but never placed in his personnel file. The Department, in fact, denies this

allegation. Answer at ¶16, Dkt. No. 20. Without clearer information as to what

took place, how Pratt discovered the fraudulent performance evaluation, and

whether it remains (or was ever placed) in his personnel file, the Court cannot

determine whether or not what transpired is an adverse employment action. [5] The

_____

[5]Because Pratt failed to establish that this allegation constitutes an adverse employment action,

Department's Motion is granted with respect to this allegation, but with leave to amend.

Paragraph 33(e) alleges that on November 22, 2017, Pratt was given notice that his work performance was at an unsatisfactory level despite his supervisor having told him and a union representative that he was doing good work. Pratt alleges that he was told he had three months to improve his work performance to a satisfactory level. The Department acknowledges that Pratt received a "Notice to Improve Performance." Answer ¶ 16. Citing *Brooks v. City of San Mateo,* however, the Department argues that this performance evaluation was not "final and lasting" and therefore does not constitute an adverse employment action. 229 F.3d 917, 930 (9th Cir. 2000) (holding that a negative performance evaluation was not an adverse employment action where the employee had filed an appeal of the evaluation but resigned before the appeal was resolved).

There is scant authority on the subject of whether a performance review needs to be final to constitute an adverse employment action, and courts within the Ninth Circuit have looked at the facts of each case to make that determination. *See e.g. Yartzoff* 809 F.2d at 1376 (performance evaluations are adverse employment actions for the purposes of retaliation claims); *Kortan v. California Youth Authority,* 217 F.3d 1104 (9th Cir. 2000) (a sub-average performance

---

the Court once again does not reach causation, except to point to its earlier order. *See supra* at n.4.

evaluation *that is not circulated beyond a supervisor* is not an adverse employment

action); *Cozzi v. County of Marin,* 787 F.Supp.2d 1047, 1061 (N.D.Cal. 2011)

(holding that a written warning was not an adverse employment action in the

context of retaliation and sex discrimination claims *because it was not put in the*

*employee's personnel file* and did not affect the terms and conditions of

employment).  Whether or not a negative performance evaluation is an adverse

employment action, in other words, turns on the specific facts of the case,

including whether the evaluation was entered into the employee's personnel file

and whether it was circulated beyond his immediate supervisors.

     Here, it is unclear from the pleadings whether the notice of unsatisfactory

work performance alleged in paragraph 33(e) was a formal performance review at

all since, as described in the FAC, it was only a notice given to Pratt.  Moreover,

while the FAC alleges that "the Notice contained false and misleading statements

of fact," it does not allege whether it was entered into Pratt's personnel file or

somehow affected his opportunities for promotion.  Nor has Pratt alleged what

happened, if anything, after the three-month period to improve his work

performance elapsed.  The FAC was filed in May 2018, six months after Pratt

received the notice.  As with the "fraudulent performance appraisal system"

alleged in paragraph 33(d), without more information about the notice of

unsatisfactory work performance in paragraph 33(e), this Court finds that the

pleadings are insufficient to allege an adverse employment action.  The Motion for Judgment on the Pleadings is therefore GRANTED as to this allegation, but with leave to amend.

Paragraphs 33(f) and 33(i) both allege retaliatory acts which occurred in March 2018.[6]  Regardless of whether either paragraph contains events that could be considered to be adverse employment actions, both fail to establish causation.  As discussed above, in the absence of direct evidence of causation, courts look for a temporal connection between the protected activity and the alleged retaliatory act.  *Dawson,* 630 F.3d at 936.  Here, Pratt has alleged that the protected activity for which he was being retaliated against was the February 2017 filing of the EEOC Charge.  FAC ¶ 32.  The allegations in paragraphs (f) and (i) are events that took place in March 2018, thirteen months after the protected activity.  Courts have found that a five-month lag between the protected activity and the retaliatory acts is too long to infer causation.  *See e.g. Brown v. Dep't of Public Safety*, 446 Fed. Appx. 70, 73 (9th Cir. 2011) (holding that, without more, a 5-month gap between actions was insufficient to infer causation for retaliation); *Yartzoff*, 809 F.2d at

---

[6]The Department argues that because Pratt's February 2017 EEOC Charge did not, and indeed could not, have included the March 2018 events alleged in paragraphs 33(f)-(i), Pratt failed to exhaust administrative remedies with respect to those allegations. However, the Court finds that the reasoning in the Court's April 2018 Order sufficiently explains how these newly alleged events reasonably relate back to the original February 2017 charge, and the Court therefore declines to dispose of these allegations on the basis of exhaustion.

1376 (holding a 9-month lapse between employee's complaint of discrimination and an adverse action was insufficient for causation).

Given the thirteen-month lag time, and absent any direct or even circumstantial evidence that the 2018 events were precipitated by the February 2017 EEOC Charge, Pratt has failed to allege how these acts could be construed as retaliation for his participation in protected activity. Because Pratt has failed to establish causation, the Department's Motion is granted with respect to the allegations in paragraphs (f) and (i) without leave to amend.[7]

## II. Count II: Hostile Work Environment

Pratt alleges that he was subject to a sexually hostile work environment. FAC ¶¶ 39-42. The Department argues that (1) Pratt failed to exhaust administrative remedies with respect to his hostile work environment claim, and (2) Pratt failed to allege facts that might support his claim because he does not actually allege any harassment that was *sexual* in nature.[8]   Motion at 14.

Because the Court has already addressed the exhaustion of Pratt's hostile work environment claim, *see* April 2018 Order at 19-23, it declines to do so again.

---

[7]DPS also argues that the allegations in paragraphs (f) and (i) are insufficient because they are not adverse actions. Because the allegations fail to establish a causal link, the Court does not address DPS' additional contentions.

[8]Although DPS' Motion correctly states that a hostile work environment claim is characterized by conduct "severe and pervasive" enough to alter the terms and conditions of employment, DPS does not argue that this standard was not met until its reply. *Cf.* MJOP at 29 with Reply at 13-14. The Court declines to entertain arguments made for the first time in reply. *See* LR7.4.

Nevertheless, the Court agrees that the events, as alleged, do not adequately describe conduct that was sexual in nature, and the FAC therefore fails to state a hostile work environment claim. DPS' Motion is GRANTED with respect to hostile work environment, with leave to amend consistent with the guidance below.

A plaintiff states a *prima facie* claim for hostile work environment based on sex by showing "(1) that [the plaintiff] was subjected to verbal or physical conduct based on [plaintiff's…sex]; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive so as to alter the conditions of [the plaintiff's] employment and create an abusive work environment." *Cooper v. Cate,* 2012 WL 1669353 *5 (9th Cir. 2012) (citing *Galdamez v. Potter,* 415 F.3d 1015, 1023 (9th Cir.2005) and *Kortan,* 217 F.3d at 1109–10). Pratt fails the first touchstone.

Pratt's allegations in support of his hostile work environment claim are that he: was denied a performance evaluation; had his badge taken away; was involuntarily transferred between jobs; was told that he was being retaliated against; was threatened with another involuntary transfer if he did not sign a settlement agreement; was given a fraudulent performance appraisal; was given an undeserved notice of unsatisfactory work performance; was given an unprecedented cease-and-desist letter; and was falsely accused of and investigated for misuse of sick leave. None of these facts allege harassment *based on sex.*

The Court acknowledges that there is no exhaustive list of conduct that constitutes harassment based on sex. However, at the risk of stating the obvious, the conduct must be sexual in nature. Several examples are instructive. In *Rene v. MGM Grand Hotel, Inc.,* 305 F.3d 1061, 1064 (9th Cir. 2002), the harassers' conduct included whistling and blowing kisses at the plaintiff, calling him "sweetheart," groping him, showing him sexually explicit photos, and telling sexually explicit jokes. In *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 60 (1986), the conduct alleged was groping, fondling, indecent exposure, and rape. In *Henson v. Dundee,* 682 F.2d 897, 902 (11th Cir. 1982), quid pro quo sexual abuse in exchange for "the privilege of being allowed to work" was at issue. None of these types of sexual conduct is alleged here.[9] Accordingly, DPS' Motion is GRANTED with respect to the hostile work environment claim, with leave to amend.

## III. Count III: Sex Discrimination

Pratt alleges that he suffered sex discrimination on the basis of his sexual orientation. FAC ¶¶ 43-48. The Department argues that the sex discrimination claim should be dismissed because (1) Pratt failed to exhaust administrative remedies, and this Court therefore does not have subject matter jurisdiction (MJOP

---

[9]Certain allegations, such as suggestions that Pratt was involved in a sexual relationship with another deputy, and the use of homophobic slurs, were alleged in the FAC (*see e.g.* ¶¶ 20, 26) solely as background and are precluded from consideration here because, as stated in the Court's April 2018 Order, they predate the 2015 Lawsuit and are barred by *res judicata*.

10-18); (2) sex discrimination on the basis of sexual orientation has not been recognized by the Ninth Circuit (MJOP at 31-32); and (3) Pratt fails to sufficiently allege facts to state a prima facie claim of sex discrimination (MJOP at 18-27).

The Court rejects the Department's first two arguments. As described with respect to the sexually hostile work environment claim discussed above, the Court has already ruled on the exhaustion issue, finding that Pratt's allegations post-dating the 2017 EEOC Charge reasonably relate to the 2017 EEOC Charge and have therefore been administratively exhausted. Further, the Court finds that sex discrimination based on sexual orientation is cognizable under Title VII.

However, as to the Department's third argument, insufficiency of the allegations, the Court finds that only some of the allegations can plausibly support a sex discrimination claim and those that can are too incompletely pled to make out a prima facie showing. Thus, DPS' Motion is GRANTED with respect to Count III, with leave to amend, consistent with the guidance below.

### A.    *Legal Framework*

Courts apply the *McDonnell Douglas* framework to analyze whether a plaintiff has established sex discrimination. Unlawful discrimination is presumed if the plaintiff can show that "(1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) other employees with qualifications similar to

her own were treated more favorably." *Godwin v. Hunt Wesson, Inc*., 150 F.3d 1217, 1220 (9th Cir.1998) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).)

### B. Discussion

#### 1. "Protected Class" Status

Although the Ninth Circuit has not yet weighed in on the question of sex discrimination based on sexual orientation, the Second and Seventh Circuits, as well as the EEOC, have recognized it. *See Zarda v. Altitude Express, Inc*., 883 F.3d 100 (2d Cir. 2018); *Hively v. Ivy Tech Comm. College of Indiana*, 853 F.3d 339 (7th Cir. 2017); *Complainant  v. Anthony Foxx, Secretary, Dept. of Transp*., 2015 WL 4397641, at *4-5 (EEOC Jul. 15, 2015).  At least one other district court in the Ninth Circuit has found the reasoning set forth in these cases to be persuasive. *Somers v. Digital Realty Tr. Inc.*, 2018 WL 3730469, at *7 (N.D. Cal. Aug. 6, 2018) ("to the extent that Plaintiff alleged that he was treated differently because of his sexual orientation as a gay man, that treatment inherently was based both on his own sex (a man) and the sex of his partner (a man). Thus, under the persuasive reasoning of *Zarda* and *Hively*, Plaintiff may invoke the protections of Title VII against sex-based discrimination, specifically with respect to his sexual orientation").  Those courts that have found sexual orientation discrimination cognizable reason that "sexual orientation discrimination is predicated on

assumptions about how persons of a certain sex can or should be, which is an impermissible basis for adverse employment actions." *Id.* This Court agrees.

Pratt has stated that he is a homosexual man. FAC ¶ 14. As such, he has properly alleged that he belongs to a protected class, satisfying the first prong of the *McDonnell Douglas* framework.

### 2. Satisfactory Performance

The Department has not challenged the sufficiency of Pratt's allegations with respect to Pratt's qualifications or job performance. Accordingly, the Court does not further address the second prong of *McDonnell Douglas*.

### 3. Adverse Employment Action

In paragraphs 31and 33 of the FAC, Pratt alleges ten events that support his sex discrimination claim. The Department argues that none of these events constitute adverse employment actions.

Title VII provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e–2(a)(1). The Supreme Court has held that "this not only covers 'terms' and 'conditions' in the narrow sense, but 'evinces a congressional intent to strike at the entire spectrum of disparate treatment ... in employment.'" *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 78 (1998) (quoting *Meritor,* 477 U.S. at 64).

In discrimination cases, an adverse employment action "affect[s] the compensation, terms, conditions, or privileges" of employment. *Chuang v. University of California Davis, Board of Trustees*, 225 F.3d 1115, 1126 (9th Cir. 2000); *see Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (more burdensome and strenuous work assignment amounted to adverse employment action); *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 818-19 (9th Cir. 2002) (adverse employment conditions included "severe verbal and physical abuse, discriminatory overtime, and termination"). However, not all forms of negative treatment in the workplace constitute an adverse employment action. *See e.g. Hellman v. Weisberg*, 360 F. App'x 776, 779 (9th Cir. 2009) (social ostracism, threat of termination, and a reprimand are not adverse employment actions). Indeed, the scope of adverse employment actions in the discrimination context is narrower than with respect to retaliation. *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67 (2006).

With these principles in mind, each of Pratt's allegations is considered below.

Paragraph 31(a) alleges that Pratt's supervisor, Deputy Cummings, refused to complete a performance evaluation.[10] The FAC does not allege how this act had

---

[10]As described previously, the substance of the allegations in FAC paragraph 31(a) – (c) was discussed in the Court's April 2018 Order. The Court ruled that the allegations failed to establish causation for purposes of a *retaliation* claim. The Court now considers these same

a material effect on the compensation, terms, conditions or privileges of Pratt's employment. While a *negative* performance review that undermines a promotion or results in a demotion *could* be an adverse employment action, it is not clear how the absence of such a review had a similar effect. *Yartzoff* 809 F.2d at 1376; *see also Kortan,* 217 F.3d at 1113 (a negative evaluation was not an adverse action where it was not disseminated beyond the second-level supervisor and was ultimately corrected). Failure to conduct a performance review appears more akin to a performance review that is not widely disseminated as in *Kortan* than a negative performance review as in *Yartzoff*. As pleaded, this event is insufficient to support a sex discrimination cause of action, but leave to amend is granted.

Paragraph 31(b) states that the Department took away Pratt's badge. However, the allegation provides no further information about the impact of this action on Pratt's ability to perform his job duties or its effect on the terms of his employment. For the same reasons as above with respect to paragraph 31(a), then, the allegation is insufficient to establish an adverse employment action, but leave to amend is GRANTED.

Paragraph 31(c) states that Pratt was demoted from "Sheriff/Investigator in CIU to a secretary for the Hawaii Paroling Authority." This allegation, on its face,

---

allegations to determine whether they constitute adverse employment actions with respect to sex discrimination.

satisfies the adverse employment action requirement because demotions clearly affect the terms and conditions of employment.

Paragraph 33(a) states that another Department employee informed Pratt that the Department was retaliating against him. As discussed above, this allegation is not itself retaliatory, nor can it support a charge of discrimination. What the Department's employee was *referring to* might support a charge of discrimination, but not the statement itself, which did not materially alter the terms or conditions of Pratt's employment. Accordingly, paragraph 33(a) cannot serve as the basis of a sex discrimination claim, and leave to amend is DENIED.

Paragraph 33(b) alleges that Pratt was transferred between departments. Contrary to the Department's unsupported assertion that transfers are not materially adverse (MJOP at 20-21), the Ninth Circuit recognizes that transfers *may* be considered adverse employment actions. *Yartzoff,* 809 F.2d at 1376 (9th Cir.1987) (holding that "[t]ransfers of job duties and undeserved performance ratings, if proven, would constitute 'adverse employment decisions.'"). However, Pratt does not allege *how* his transfer was such an adverse event. Without such an allegation, the Court cannot assess whether this transfer was of the kind that constitutes a materially adverse action as in *Yartzoff* or not. *Cf. Steiner*, 25 F.3d at 1465 (9th Cir. 1994) (questioning whether transfer from swing shift to day shift was an adverse employment action because employee was not demoted, or put in a

worse job, or given additional responsibilities); *Nidds v. Schindler Elevator Corp.,* 113 F.3d 912, 915, 919 (9th Cir.1996) (declining to treat a transfer from one department to another as an adverse employment action, despite plaintiff's characterization of the transfer as a demotion, without a pay decrease). Because Pratt has not provided enough information about the differences between the two jobs to understand how the transfer might have materially changed the terms and conditions of employment, as currently pleaded, this allegation fails to satisfy the adverse employment action requirement of *McDonnell Douglas*. Leave to amend, however, is GRANTED.

Paragraph 33(c) alleges that the Department attempted to "coerce" Pratt to sign a settlement agreement by threatening to transfer him back to a secretarial role from a job with the parole department. Pratt, however, provides no information in the FAC as to whether the Department made good on its threat. Absent an actual transfer or demotion, there is no adverse employment action because an attempt is no employment action at all. *Lewis,* 252 F. App'x at 807. Leave to amend is GRANTED.

Paragraph 33(d) alleges that Pratt received what appears to be an unsatisfactory performance appraisal. The FAC states "on June 28, 2017, Employer created a fraudulent Performance Appraisal System . . . in which Employer falsely reported that Plaintiff had been doing "unsatisfactory work' . . .

Plaintiff's signature on the PAS was forged . . . Plaintiff learned from HR that the June 28, 2017 PAS was never in his personnel file, confirming [it] was fabricated and forged." Undeserved performance ratings *may* constitute adverse employment actions. *See Ray,* 217 F.3d at 1241 (quoting *Yartzoff* for the proposition that ". . . undeserved performance ratings, if proven, would constitute 'adverse employment decisions.'"). However, in Pratt's case, it is unclear whether the performance appraisal was placed into his personnel file or ever impacted his employment prospects or conditions in a material way. Indeed, given Pratt's reference to an appraisal system, rather than an appraisal, it is not clear whether an unsatisfactory appraisal is even at issue. Until this is clarified, the Court cannot discern whether an adverse employment action is stated. Leave to amend this allegation is GRANTED.

Paragraph 33(e) alleges that on November 22, 2017, Pratt was given notice that his work performance was at an unsatisfactory level. Pratt alleges that he was told he had three months to improve, presumably or else. Citing *Brooks,* the Department alleges that this performance evaluation was not "final and lasting" and therefore does not constitute an adverse employment action. 229 F.3d 917, 930 (9th Cir. 2000) (holding that a negative performance evaluation was not an adverse employment action where the employee had filed an appeal).

There is scant authority on the subject of whether a performance review needs to be final to constitute an adverse employment action in a sex discrimination action, with courts within the Ninth Circuit applying disparate standards. *See, Fonseca v. Sysco Food Servs. of Az., Inc.,* 374 F.3d 840, 848 (9th Cir. 2004) (reversing summary judgment for defendant in a discrimination case on the basis that a "warning letter still constitutes an adverse employment action" in part because the defendant publicizes all disciplinary actions to all its employees.); *Cozzi v. County of Marin,* 787 F.Supp.2d at1061 (holding that a written warning is not an adverse employment action because the letter was not put in employee's personnel file and did not affect terms and conditions of employment); *Grimmett v. Knife River Corp.-Nw.,* 2011 WL 841149, at *9 (D. Or. Mar. 8, 2011) (written warning was not an adverse employment action in a race discrimination case); *Hoang v. Wells Fargo Bank, N.A.,* 724 F.Supp.2d 1094 (D.Or. 2010) (warning letter that did not implement material change in terms and conditions of employment is not by itself adverse employment action.) What is evident, however, is that whether or not a negative performance evaluation is an adverse employment action depends on the specific facts of the case.

Here, it is unclear from the pleadings whether the notice of unsatisfactory work performance was a formal performance review at all since, as described in the FAC, it was only a notice given to Pratt. The FAC alleges that "the Notice

contained false and misleading statements of fact . . ." but does not allege whether it was ever finalized, placed in Pratt's personnel file, or otherwise somehow affected his employment opportunities.  Pratt also has not alleged what happened after the three-month period to improve his work performance elapsed.  Without more, this Court finds that the notice of unsatisfactory performance does not amount to an adverse action.  However, leave to amend is GRANTED.

Paragraph 33(f) alleges that Pratt received a cease-and-desist letter from the Department, instructing him to stop using Department email to lobby for a particular legislative bill.  The Department argues that a cease-and-desist letter does not constitute an adverse employment action.  MJOP at 22.   In *Sanchez v. California*, the district court reasoned that, because the cease-and-desist letter contained accurate information, was deserved, was not placed in the plaintiff's file, and, by the plaintiff's admission, "did not impact her ability to promote, transfer, or enter into work programs," the letter was not an adverse employment action.  90 F. Supp.3d 1036, 1055-57 (E.D.Cal. 2015).

As the allegations are currently styled, it is not apparent how the cease-and-desist letter regarding the use of Department email constitutes an adverse employment action.  Although Pratt argues that he was the only one to receive such a letter, it is not clear whether the letter was accurate, was added to Pratt's personnel file, or impacted the terms and conditions of his employment.  Without

clarification, the Court cannot determine whether this allegation, viewed in the light most favorable to the plaintiff, constituted an adverse employment action. Leave to amend is GRANTED.

Paragraph 33(i) alleges that the Department initiated an investigation falsely accusing Pratt of falsifying a sick leave request. The mere fact of initiating an investigation, with no resulting change to the conditions of employment, is not an adverse employment action. *Campbell v. Hawaii Dep't of Educ.,* 892 F.3d 1005, 1013 (9th Cir. 2018) (affirming grant of summary judgment for defendant where plaintiff was "allowed to continue to work as normal" even after investigators found plaintiff had committed misconduct.) Without more information as to what occurred as a result of the investigation, the Court cannot determine that the investigation itself was an adverse employment action. This allegation is dismissed with leave to amend.

### 4.    *Similarly Situated Employees*

The only allegation which succeeds in establishing an adverse employment action and thus survives to the fourth line of inquiry in the *McDonnell Douglas* framework is paragraph 31(c). That paragraph alleges that Pratt was demoted from a sheriff's deputy to a secretarial position.

The *McDonnell Douglas* framework requires that Pratt allege that similarly situated employees were treated differently. The FAC, however, includes only two

such assertions: (1) that Pratt was the only person to receive a cease-and-desist letter for using email to lobby for a bill while other employees use their work email to make personal communications (FAC ¶ 33(f)), and (2) that Pratt was the only employee investigated for misuse of sick leave (FAC ¶ 33(i)). Neither of these allegations relates to Pratt's demotion from deputy sheriff to secretary. As such, paragraph 31(c) also fails to state a claim because Pratt does not allege whether other similarly situated employees were treated differently. Leave to amend is GRANTED.

With the exception of Pratt's assertion that he was demoted from deputy sheriff to secretary (FAC ¶ 31(c)), Pratt's allegations fail to identify an adverse employment action. Moreover, even with respect to this demotion allegation, Pratt failed to allege disparate treatment. For these reasons, Pratt has failed to state a sex discrimination claim. DPS' Motion is GRANTED with limited leave to amend, as described above.

## CONCLUSION

Pursuant to the foregoing, the Court GRANTS IN PART Defendants' Motion for Judgment on the Pleadings (Dkt. No. 24). Counts I through III of the First Amended Complaint (Dkt. No. 18) are DISMISSED WITHOUT

PREJUDICE.[11]  Leave to amend is GRANTED, consistent with the terms of this

Order, and must be accomplished within thirty (30) days.[12]  Failure to do so will

result in the dismissal of this action with prejudice.

IT IS SO ORDERED.

DATED: November 8, 2018 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

*Pratt v. State Of Hawaiʻi, Department Of Public Safety, Doe Defendants 1-10,*
CIV. NO. 17-00599 DKW-RLP; **ORDER GRANTING IN PART MOTION
FOR JUDGMENT ON THE PLEADINGS**

---

[11]The Department asks the Court to dismiss all of Pratt's claims with prejudice as a sanction for inclusion of certain claims already dismissed with prejudice in the Court's April 2018 Order. MJOP at 9; FAC ¶¶ 31(a) – (c).  The Department has offered no authority for imposing such severe sanctions in the circumstances alleged.  Moreover, the FAC sufficiently distinguishes those factual allegations on which the FAC relies in support of Pratt's three claims from those that were previously disposed of and now serve merely as background information.  The Court therefore declines DPS' request.

[12]Throughout, the Court has granted leave to amend, where appropriate, because there is no evidence or argument of dilatory maneuvering or bad faith on the part of Pratt, and because further amendment would not result in undue delay, given the age of this case where the initial Rule 16 scheduling conference has not yet occurred.  *Howey*, 481 F.2d at 1191; *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387–88 (9th Cir. 1990).  In the limited circumstances where leave to amend has been denied, it is because amendment appears to be futile.  *See generally Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend.").