# UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAIʻI

| | |
|---|---|
| KEIRON B. PRATT, | CIV. NO. 17-00599 DKW-RLP |
| Plaintiff, | |
| vs. | **ORDER GRANTING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS** |
| STATE OF HAWAII, DEPARTMENT OF PUBLIC SAFETY, DOE DEFENDANTS 1–10, | |
| Defendants. | |

Pratt initiated a state and federal law-based employment discrimination action on December 19, 2017, seeking monetary damages and equitable relief against his former employer, Defendant State of Hawaiʻi, Department of Public Safety ("DPS" or "Department"). This Court dismissed Pratt's Complaint and First Amended Complaint in April and November 2018, respectively, each with leave to amend. Dkt. Nos. 16 and 33.

On December 8, 2018, Pratt filed a Second Amended Complaint ("SAC") limited to Title VII-based retaliation and sex discrimination claims. For the reasons set forth below, the Department's Motion for Judgment on the Pleadings is GRANTED as to Pratt's sex discrimination claims and GRANTED IN PART as to his retaliation claims. Further leave to amend is DENIED.

## BACKGROUND

Pratt worked as a Deputy Sheriff for the Department of Public Safety from April 2002 until 2017. *See* SAC ¶¶11-13. Initially hired as a "Deputy Sheriff I" (SAC ¶11), Pratt "was promoted to Deputy Sheriff II" in 2003 (SAC ¶12). As a Deputy Sheriff II, Pratt was "assigned to various sections including the Criminal Investigation Unit [("CIU")] of the Sheriff Division as an Investigator" (SAC ¶13). In 2008, Pratt "sought a transfer from warrants to [the] records department" (SAC ¶22); in 2009, he sought a transfer to Capitol Patrol (SAC ¶23); and in 2013, he sought a transfer again, this time to CIU (SAC ¶25).

Pratt states that he has been "open about his homosexuality" since receiving a "homosexual discharge by the military under DD-214" in 1994. SAC ¶15. Although Pratt "did not talk about his homosexuality" in the workplace prior to 2004 (SAC ¶¶17), "[t]he DD-214 . . . was given to" DPS when Pratt was hired, and DPS "placed it in his personnel file with HR" (SAC ¶16). "In 2004, [Pratt] became openly gay at his workplace in the Warrants Division after he was informed by his partner deputy sheriff that everyone at the office, including his supervisors and fellow deputy sheriffs, knew he was gay." SAC ¶18. From that time until 2007, Pratt claims to have been "repeatedly and frequently sexually harassed by fellow deputy sheriffs, who would call him by female-gender names and scorn and

ridicule him and his lack of dating women, and humiliate him by displaying homophobic behavior toward him." SAC ¶20.

In 2008, Pratt filed an administrative complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Hawaiʻi Civil Rights Commission ("HCRC") regarding this harassment. SAC ¶21. Pratt filed suit in state court in 2012, Civil No. 12-1-1409-05 KKS ("2012 Lawsuit"). SAC ¶24.[1]

On May 1, 2014, Pratt alleges that he "was again subjected to sex discrimination, [a] sexually hostile work environment, and retaliation by his fellow deputies" in the CIU, "who ridiculed him for his sexual orientation (gay) and stated that [he] was his partner's '10-3', a code used for deputies who are married and are seeing someone on the side." SAC ¶26. As a result of these incidents, Pratt filed another administrative complaint, and after receiving a right-to-sue letter from the HCRC, Pratt sued DPS again in both state and federal courts. SAC ¶27 (citing *Keiron Pratt v. State of Hawaii, et al.*; Civil No. 15-1-1289-07 JHC (1st Cir. Ct., State of Hawaiʻi); *Keiron Pratt v. State of Hawaii, et al.*, Civil No. 15-00264 HG KSC (D. Haw. July 14, 2015) ("2015 Lawsuit")) According to Pratt, the 2015 Lawsuit was "resolved in [his] favor pursuant to a settlement agreement ('the April 2016 Settlement')." SAC ¶29.

_____

[1]The 2012 Lawsuit was dismissed without prejudice on December 14, 2014. *See* Cook Decl., Ex. 3 [2015 Judgment] at 1–2, Dkt. No. 9-8.

Pratt alleges that after the April 2016 Settlement, DPS subjected him yet again to a "further sexually hostile work environment, sex discrimination, and retaliation." SAC ¶30. Pratt summarizes the facts underlying these alleged wrongdoings in paragraphs 30 through 48 of the SAC and asserts that these events resulted in another administrative complaint with the HCRC and EEOC on February 22, 2017 ("EEOC Charge"). SAC ¶31.

The EEOC issued Pratt a right-to-sue letter on October 16, 2017. SAC ¶4. Pratt then initiated the instant lawsuit on December 19, 2017. Complaint ("Compl."), Dkt. No. 1.

The Department responded by filing a Motion to Dismiss in Lieu of an Answer, arguing *inter alia* that several of Pratt's claims were barred by *res judicata* and failed to state a claim for which relief could be granted. Motion to Dismiss, Dkt. No. 9. The Court granted the Motion to Dismiss without leave to amend with respect to all state-law claims previously adjudicated in the 2012 and 2015 Lawsuits. April 2018 Order, Dkt. No. 16. The Court also granted Pratt leave to amend his Title VII claims. *Id.*

On May 8, 2018, in accordance with the Court's April 2018 Order, Pratt filed a First Amended Complaint. Dkt. No. 18. In the FAC, Pratt asserted three claims against DPS:

1)     Retaliation under the Civil Rights Act of 1964, 42 U.S.C. §§ 2000, *et seq.* ("Title VII") ("Count I"; FAC ¶¶35–38);

2)       Sexually Hostile Work Environment, in violation of Title VII, ("Count II"; FAC ¶¶39–42); and

3)       Sex Discrimination, in violation of Title VII, ("Count III"; FAC ¶¶43–49).

This time, the Department moved for judgment on the pleadings. First MJOP, August 3, 2018, Dkt. No. 24. The Court granted the First MJOP with respect to all three claims, but once again, granted Pratt leave to amend. November 8, 2018 Order, Dkt. No. 33.

In the SAC, filed on December 8, 2018, Pratt reasserted Title VII retaliation and sex discrimination claims.[2] SAC, Dkt. No. 34. In support of both claims, Pratt alleged the following:

a. In April 2017, DPS converted Plaintiff's job title from Office Assistant to Parole Officer III at the Hawaii Paroling Authority.
b. On November 22, 2017, Ed Hyun, the chairman of the Hawaii Paroling Authority, issued a notice of unsatisfactory performance to Pratt, informing Pratt that his work performance did not meet established performance requirements.
c. In the ensuing three months, beginning in November 2017, Pratt's supervisor, Corey Reinke, subjected Pratt to onerous and unnecessary scrutiny, requiring him and his union steward to meet with Reinke every Friday for 30 to 40 minutes to review Pratt's work. These weekly meetings denied and/or interfered with Pratt's ability to perform his job as a Parole Officer.

*See* SAC ¶¶31-48.

---

[2]Unlike the FAC, the SAC does not advance a hostile work environment claim, despite leave having been granted to do so.

In addition, in support of his sex discrimination claim, Pratt alleged that:

d. On December 29, 2016, DPS took Pratt's Sheriff's badge away from him, which prevented him from performing his regular duties as a Deputy Sheriff, and essentially left him with nothing to do.
e. On February 1, 2017, DPS demoted Pratt from Deputy Sheriff to Office Assistant III in the Hawaii Paroling Authority.

SAC ¶¶30(a), (b).[3]

As a "direct and proximate result" of this collective wrongful conduct, Pratt alleges that he sustained damages. SAC ¶54. The SAC therefore requests "back pay, front pay, compensatory damages, special damages, and general damages, together with costs of suit," and "reasonable attorneys' fees," among other things. SAC ¶¶54, 60.

Before the Court is the Department's January 17, 2019 MJOP. Dkt. No. 38. Following a hearing on the MJOP on March 8, 2019 (*see* EP, Dkt. No. 48), the Court ordered limited supplemental briefing to address the question of what documents submitted by the movant in its MJOP can properly be considered by the Court. Supplemental briefing was completed by both parties on March 15, 2019. Dkt. Nos. 49, 50. Thereafter, the Court took matters under advisement. This disposition follows.

\\\

---

[3]The events set forth in SAC paragraph 30 relate only to Pratt's sex discrimination claim and could not support Pratt's retaliation claim because they pre-date the February 22, 2017 protected activity on which his retaliation claims are based. *See e.g. infra* at 18-24.

## LEGAL STANDARDS

*Motion for Judgment on the Pleadings*

The Court may enter judgment on the pleadings under Rule 12(c), "after the pleadings are closed—but early enough not to delay trial." When evaluating a Rule 12(c) motion, a court must construe the factual allegations of the complaint in the light most favorable to the nonmoving party. *Fleming v. Pickard,* 581 F.3d 922, 925 (9th Cir. 2009). As part of that approach, the allegations of the nonmoving party are accepted as true, while the allegations of the moving party that have been denied are assumed to be false. *See Hal Roach Studios v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1550 (9th Cir. 1989). Additionally, a court may properly consider documents offered by both parties in the pleadings, including documents attached to the pleadings. *Employer's Insurance of Wausau v. Price Aircraft Co*., 283 F.Supp.2d 1144, 1146 (D. Haw. 2003).

The standard governing a Rule 12(c) motion for judgment on the pleadings is "functionally identical" to that governing a Rule 12(b)(6) motion. *United States ex rel. Caffaso v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). The Court may dismiss a complaint under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted" when there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  In other words, a plaintiff is required to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Factual allegations that only permit the Court to infer "the mere possibility of misconduct" do not constitute a short and plain statement of the claim showing that the pleader is entitled to relief as required by Fed.R.Civ.P. 8(a)(2).  *Id.* at 677, 679 (explaining that the Federal Rules "do[] not require 'detailed factual allegations,' but [they] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation").  Conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  *See Iqbal*, 556 U.S. at 678 (explaining that the construed-as-true/light-most-favorable tenet "is inapplicable to legal conclusions"); *Sprewell*, 266 F.3d at 988; *see also Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . , a

plaintiff's obligation to provide the 'grounds' of his [or her] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Moreover, the court need not accept as true allegations that contradict matters properly subject to judicial notice, nor must it assume that allegations contradicted by the exhibits attached to the complaint are true. *Sprewell*, 266 F.3d at 988. As the Ninth Circuit has explained, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

### Leave to Amend

Under Fed.R.Civ.P. 15(a)(2), leave to amend a party's pleading "should [be] freely give[n] . . . when justice so requires." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (explaining that "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities") (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)). Further, the Ninth Circuit has explained that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th

Cir. 1990) (citing *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962); *Erlich v. Glasner*, 352 F.2d 119, 122 (9th Cir. 1965)). Nonetheless, leave to amend may be denied for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Mayes v. Leipziger*, 729 F.2d 605, 608 (9th Cir. 1984) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

With these standards in mind, the Court turns to the Department's MJOP.

## DISCUSSION

Pratt's claims for retaliation (Count I) and sex discrimination (Count II) arise under Title VII. For the reasons described below, the Department's MJOP is DENIED with respect to the retaliation claims arising out of Pratt's April 2017 change of title from Office Assistant to Parole Officer but GRANTED with respect to each of Pratt's other claims. Further leave to amend is DENIED.

## I.    Count I: Retaliation

Pratt alleges that the Department unlawfully retaliated against him for filing his February 2017 EEOC Charge, which the parties agree constitutes protected activity under Title VII. SAC ¶32. The factual allegations in support of this claim are found in paragraphs 31 through 48 of the SAC. The allegations relate to events in two discrete time frames: (1) the April 2017 "change of Pratt's title from Office

Assistant to Parole Officer III at the Hawai'i Paroling Authority," and (2) the

November 2017 "Notice of Unsatisfactory Performance Letter" and consequent

remedial supervision by Chairman Hyun and Supervisor Reinke.

The Department contends that Pratt's retaliation claim should be dismissed

for failure to state a claim upon which relief can be granted because neither

allegation amounts to an "adverse employment action" nor is causally related to

Pratt's February 2017 protected activity.

### A.    *Legal Framework*

To establish a prima facie claim of retaliation, a plaintiff must show that "1)

he acted to protect [his] Title VII rights; 2) an adverse employment action was

thereafter taken against [him]; and 3) that a causal link existed between the two

events." *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004)

(citing *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994),

*cert. denied*, 513 U.S. 1082 (1995)).

### 1.    *Adverse Employment Action*

For retaliation purposes, an action is "cognizable as an adverse employment

action if it is reasonably likely to deter employees from engaging in protected

activity." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000).  An adverse

employment action in a retaliation case does not need to be a final or ultimate

employment action, such as hiring, firing or demotion, nor does it need to

"materially affect the terms and conditions of employment." *Id.* In that sense, an adverse employment action is more broadly construed in the retaliation context than when alleged in support of a discrimination claim. *Burlington N. Santa Fe Rwy Co. v. White,* 546 U.S. 53, 60–63 (2006) (recognizing that the anti-retaliation provisions of Title VII, unlike the substantive provisions, are not limited to actions that affect the terms and conditions of employment and defining adverse employment action for purposes of retaliation claims as an action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."). For instance, the Ninth Circuit has recognized lateral transfers, unfavorable references, and a more burdensome work schedule as adverse employment actions for purposes of retaliation. *Ray,* 217 F.3d at 1243 (citations omitted).

2. *Causation*

According to the United States Supreme Court, establishing causation for a retaliation claim "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (concluding that a plaintiff making a retaliation claim under Title VII "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer"); *accord Gallagher v. San Diego Unified Port*

*Dist.*, 668 Fed. Appx. 786, 787 (9th Cir. 2016). "To show the requisite causal link, the plaintiff must present evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) (citing *Hagans v. Andrus*, 651 F.2d 622, 626 (9th Cir.), *cert. denied*, 454 U.S. 859 (1981); *Meyer v. Cal. & Hawaiian Sugar Co.*, 662 F.2d 637, 639 (9th Cir. 1981)).

### B. Discussion

There is no dispute that Pratt's filing of his EEOC Charge on February 22, 2017 (SAC ¶32) is a protected activity under Title VII, satisfying the first prong of the *McGinest* inquiry. As further described below, Pratt has successfully alleged a retaliation claim with respect to his April 2017 change of title from Office Assistant to Parole Officer III, but has failed to do so with respect to the November 22, 2017 Notice of Unsatisfactory Performance Letter.

### 1. Change of Title

Paragraph 34 alleges that Pratt's title was converted from Office Assistant to Parole Officer at HPA in April 2017. As stated in the Court's November 2018 Order, the Court does not agree, as the Department argues (MJOP at 14), that such a transfer cannot constitute an adverse employment action, unless the transfer was "a demotion" or was "materially adverse." November 2018 Order at 19. The Ninth Circuit has made it abundantly clear that lateral transfers *may* be considered

13

adverse employment actions for purposes of retaliation. *St. John v. Employment Development Dept.,* 642 F.2d 273, 274 (9th Cir. 1981) (holding that a transfer to another job of the same pay and status may constitute an adverse employment action). Whether the instant transfer amounts to such an adverse action depends on several other factors, which "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Sillars v. Nevada*, 385 Fed. Appx. 669, 671 (9th Cir. 2010) *(*citing *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006)); *Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir. 1987) ("[t]ransfers of job duties…if proven, would constitute 'adverse employment decisions.'").

Here, on its face, the cited transfer does not bear the hallmarks of adversity. To some, for instance, becoming a Parole Officer might, in fact, be a promotion from the clerical Office Assistant position described by Pratt. However, although the SAC is sparse on details, Pratt alleges that he "had never before worked as a Parole Officer and was brand new at the job." SAC ¶35. Pratt also alleges that within six months of being placed into the Parole Officer position, "while he was still learning to perform his basic duties and responsibilities," his supervisor initiated remedial supervision because Pratt's performance was unsatisfactory. SAC ¶¶37-38. In starker terms, Pratt states that "once he got to the Parole Office, his new supervisors started putting him through the ringer." Reply at 3. Taken

14

together, these allegations indicate that Pratt's placement into the Parole Officer position was not only not a promotion but amounted to an attempt by DPS to set him up to fail. DPS, in other words, purposefully placed him into a position where they knew he would not succeed. In Pratt's recounting, he was given a Hobson's choice of resigning from his then-current position or accepting a position from which he would all-but-inevitably be fired. Reply at 3. Because Pratt has provided *some* plausible indication that the differences between the two jobs and his ability to perform them might have been the type of change that would dissuade a reasonable person from engaging in protected activity, this allegation is sufficient to establish a prima facie showing of a retaliatory adverse action.

The Department seeks to rebut this inference by arguing that Pratt applied for the Parole Officer job and agreed to the change of title. MJOP at 6-7, 18. In other words, the change of title—or transfer, as the Department labels it—was voluntary. *Id.* Specifically, the Department argues that "because Pratt applied for, sought, and agreed to the transfer, it could not be deemed [] an adverse action." *Id.* at 18. In support of this argument, the Department references its Verified Answer and various exhibits attached thereto, indicating that Pratt had willingly submitted to a "job search," applied for the Parole Officer position, and agreed to transfer to HPA. *Id.*; Dkt. No. 36, Exs. 6, 7, 8. Pratt argues that the change of title was

involuntary, stating that "DPS *inexplicably* changed him from an Office Assistant to a Parole Officer."  Reply at 5 (emphasis added).

On the face of the pleadings, the facts here are controverted: Pratt alleges the Department changed his title without his consent; the Department contends that Pratt's transfer to HPA was the result of his voluntary job search.  These facts in controversy are exactly the reason the Court cannot dismiss the claim on the basis that there are "no genuine issues of material fact," as required by Rule 12(c). *Jensen Family Farms, Inc. v. Montgomery Bay Unified Air Pollution Control District,* 644 F.3d 934, 937 n. 1 ("[j]udgment…under Rule 12(c) is proper when … there is no material issue of fact…").  Although the Department offers more by way of evidence in the form of attached exhibits, the Court cannot credit that evidence over the allegations made by Pratt at this stage of the litigation.  *Fleming* 581 F.3d at 925.  Rule 12(c) requires the Court to construe the facts in the light most favorable to the non-moving party—here, Pratt.  *Id.*  Although the Court can *consider* the information attached to the Answer (as argued in the Department's supplemental briefing), it cannot accept as true facts presented in the Department's Answer that are controverted by the facts alleged in the SAC.  *Hal Roach Studios,* 896 F.2d at 1550; Department's Supplemental Brief, March 15, 2019, Dkt. No. 49 (citing *Employer's Insurance of Wausau v. Price Aircraft Co*., 283 F.Supp.2d 1144, 1146 (D. Haw. 2003).  The Department's evidence is perhaps better suited

for summary judgment. Given the Court's inability to credit the Department's exhibits as evidence over Pratt's allegations, Pratt's prima facie showing that his change of title to Parole Officer was an adverse action remains.

Regarding causation, the third prong of the *McGinest* inquiry, the Ninth Circuit allows that a "causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and adverse action." *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011) (citing *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988), *cert. denied sub nom.*, *Jordan v. Hodel*, 488 U.S. 1006 (1989)). In some instances, causation can "be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002). Time ranging from 42 days up to three months has been found sufficient to establish temporal proximity. *Id.,* 281 F.3d at 1065 (citing *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 505 (9th Cir. 1989)) (finding prima facie case of causation where plaintiffs were discharged from employment 42 and 52 days after the alleged protected activity)); *Yartzoff*, 809 F.2d at 1376 (holding that sufficient evidence existed where adverse actions occurred less than three months after the complaint was filed, two weeks after the charge was first investigated, and less than two months after the investigation ended). Here, Pratt alleges the change of job title occurred in April 2017, two

months after the filing of the EEOC Charge.  SAC ¶34.  Given this temporal

proximity to his protected activity, Pratt has successfully raised a rebuttable

inference that his protected activity was the cause of his change of job title.

As rebuttal, the Department states that the change of title alleged in

paragraph 34 occurred *prior to* the February 2017 protected activity, rendering a

causal link impossible.  MJOP at 18.  Specifically, the Department alleges that

"Pratt was transferred to the Parole Officer III position effective February 16,

2017, and filed a charge of discrimination with the EEOC… on February 22,

2017."  *Id.*  In support of this claim, the Department again references facts alleged

in its December 2018 Verified Answer, which states "[Pratt] was placed into the

Parole Officer III position effective February 16, 2017" and attaches as exhibits a

"Settlement Term Sheet" dated March 2017 (Ex. 7, "Settlement") and an

"Employee Personnel Action Report" dated April 6, 2017 (Ex. 8, "Report").  The

Settlement, allegedly signed by Pratt on March 3, 2017, states that his transfer to

the Parole Officer III role would be effective February 16, 2017.  The Report

similarly shows the effective date of the transfer to the Parole Officer III position

was February 16, 2017. (Ex. 8).  Of course, if the change of title—or "transfer," as

the Department labels it—did, in fact, occur prior to the filing of the EEOC

Charge, the causation element of the retaliation claim is negated.

However, again, the facts here are controverted: Pratt alleges the title change occurred in April 2017 and the Department alleges it occurred on February 16, 2017. Despite the Department's presentation of evidence in support of its version of facts, the Court cannot credit those allegations over that of the non-moving party under Rule 12(c).

Undeterred, at the MJOP hearing, the Department argued that some of the documents attached as exhibits and relied on by the Department in its MJOP were previously submitted by Pratt in earlier versions of his complaint and therefore should be given evidentiary weight. March 8, 2019 Hearing Transcript ("Hr'g Tr."), 6:1-12. Notwithstanding the impropriety of considering superseded and inoperative submissions, the Court notes that, even if it were to accept these documents as credible evidence, it does not follow that the version of facts evinced by those exhibits are those suggested by the Department. For example, although both the Settlement and Report state that the "effective date" of Pratt's transfer was February 16, 2017, they do not state that that was, *in fact,* the date the transfer *decision* occurred. The Court can hypothesize any number of reasons that the "effective date" of the transfer may have been back-dated prior to when the decision was in fact made, including that, as part of the settlement, Pratt was to be given the benefit of a higher salary beginning on an earlier date. Although Pratt nowhere offers such an explanation— nor in any way addresses the discrepancy

identified by the Department—he does allege that the decision to transfer him occurred in April 2017 and therefore post-dated the EEOC Charge. SAC ¶34. Construing the facts in the light most favorable to Pratt, as the Court is required to do, the Department has not rebutted the causal inference of retaliation.

Because Pratt alleged that his change of title was a "set up to fail" and that the decision to change his title occurred within two months after the date he filed his EEOC Charge, the Court finds that the claim satisfies the requirements of *McGinest*. The Department's MJOP is therefore denied as to this claim only.

### 2.    *November 2017 Unsatisfactory Performance Letter*

Pratt alleges a second set of retaliatory events—the issuance of a November 22, 2017 unsatisfactory performance notice and subsequent remedial requirements. SAC ¶38-45. The Department offers various arguments to rebut this claim, including that the notice was neither final nor lasting enough to qualify as an adverse action. MJOP at 18-20. The Department also challenges causation on the basis that Pratt's supervisors at HPA were not aware of his February 2017 protected activity. *Id.,* at 20-21. Finally, the Department argues that Pratt has not established the temporal proximity necessary to even raise the rebuttable inference of causation. *Id.*

Noting that the Department's arguments regarding HPA supervisors' knowledge of Pratt's protected activity asks the Court to credit the Department's

20

version of controverted facts and that the Department again misstates the standard

for pleading an adverse action in a retaliation claim, the Court instead addresses

the readily apparent shortfall of Pratt's allegations: the lack of temporal proximity.

In the absence of direct evidence of causation, courts look for a temporal

connection between the protected activity and the alleged retaliatory act. *Dawson,*

630 F.3d at 936. It is uncontested that Pratt filed his EEOC complaint on February

22, 2017. SAC ¶31. The unsatisfactory performance notice of which Pratt

complains was issued on November 22, 2017, precisely nine months later. SAC

¶39.

      This Circuit has determined that even a five-month lag between the

protected activity and alleged retaliation is too long to infer causation. *See e.g.,*

*Brown v. Dep't of Public Safety*, 446 Fed. Appx. 70, 73 (9th Cir. 2011) (discussing

that, without more, a 5-month gap between actions was insufficient to infer

causation for retaliation); *Yartzoff*, 809 F.2d at 1376 (holding a 9-month lapse

between employee's complaint of discrimination and an adverse action was

insufficient for causation); *Manatt v. Bank of America*, 339 F.3d 792, 802 (9th Cir.

2003) (affirming summary judgment for defendant for lack of causation where a

nine-month lag occurred between protected activity and alleged adverse action);

*Holtzclaw v. Certainteed Corp.*, 795 F. Supp. 2d 996, 1020 (E.D. Cal. 2011)

(finding two-month passage of time between the plaintiff's return from medical

leave and subsequent termination insufficient to establish the causation element);

*Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir.1997) (3–month period

insufficient)*; Hughes v. Derwinski,* 967 F.2d 1168, 1174–1175 (7th Cir. 1992) (4–

month period insufficient).  Given the nine-month lag here, together with the

absence of any direct (or even other circumstantial) allegation that the November

2017 events were precipitated by the February 2017 EEOC Charge, Pratt has failed

to allege how these acts could be construed as retaliation for his participation in

protected activity.[4]  As a result, the Court need not address whether the November

2017 events are adverse actions within the retaliation context.

     The Court therefore grants the Department's MJOP to the extent Pratt's

retaliation claim is based on the November 2017 unsatisfactory performance notice

and subsequent supervisorial requirements.  Because the Court has already twice-

granted Pratt leave to amend, both while represented by counsel, and only after

providing ample guidance as to the proper manner in which to plead this claim (*see*

Dkt. No. 16 at 25-32; Dkt. No. 33 14-24), the Court deems further leave to amend

to be futile.  *Mayes*, 729 F.2d at 608.  Leave to amend is therefore denied.

---

[4]The Court notes that although its previous orders in this case indicated that events occurring in November 2017 were not too temporally remote from the February 2017 protected activity, Ninth Circuit case law does not support this conclusion.  *See* April 2018 Order at 32 ("in light of [the February 2017 EEOC Charge…,] alleged incidents occurring in April 2017, June 28, 2017, and November 22, 2017 . . . are not too remote to establish a pattern of alleged wrongdoings sufficient to support a prima facie claim for Title VII retaliation.").

## II.    Count II: Sex Discrimination

Pratt alleges that he suffered sex discrimination on the basis of his sexual orientation. SAC ¶¶55-59. The Department argues that the sex discrimination claim should be dismissed because Pratt fails to sufficiently allege facts to state a prima facie claim of sex discrimination. MJOP at 28-31.

### A.    *Legal Framework*

Courts apply the *McDonnell Douglas* framework to analyze whether a plaintiff has properly alleged a Title VII sex discrimination claim. A plaintiff must allege that "(1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) other employees with qualifications similar to her own were treated more favorably." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir.1998) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)).

### B.    *Discussion*

In paragraphs 30 through 47 of the SAC, Pratt alleges five events in support of his sex discrimination claim: (1) the Department's decision to take Pratt's badge away on December 29, 2016 (¶30(a)); (2) Pratt's demotion from Deputy Sheriff II to Office Assistant III (¶30(b)); (3) the conversion of Pratt's job title from Office Assistant to Parole Officer III in April 2017 (¶34); (4) the Notice of Unsatisfactory

23

Performance Letter entered into Pratt's file in November 2017 (¶39); (5) and the weekly supervisory meetings with Reinke that resulted from the Notice.

The Court previously concluded that sex discrimination based on sexual orientation is cognizable under Title VII. November 2018 Order at 28. Pratt has stated that he is a homosexual man. SAC ¶14. As such, he has properly alleged that he belongs to a protected class, satisfying the first prong of the *McDonnell Douglas* framework.

However, the Department argues that none of the five alleged events constitute adverse employment actions and further argues that Pratt has not sufficiently alleged that similarly situated employees were treated differently. MJOP at 18-27. For the reasons described below, the Court agrees.

1. *Discrimination at the Sheriff's Department*

Pratt's first three allegations deal with events that occurred before he started at HPA while still an employee at the Sheriff's Department. He alleges that his badge was taken away, and he was left without duties to perform; he was demoted from a Sheriff's Deputy to an Office Assistant position; and his job title was then changed from Office Assistant to Parole Officer III at HPA. SAC ¶¶30-35.

The *McDonnell Douglas* framework requires that Pratt allege that similarly situated employees were treated differently. *Godwin*, 150 F.3d at 1220. The SAC only attempts to do so twice. First, in paragraph 45, Pratt alleges that only he was

required to meet each Friday with his union representative and supervisor at HPA. Second, in paragraph 46, Pratt alleges that no other parole officers had ever before been subjected to this kind of weekly scrutiny. Specifically, Pratt alleges that HPA singled him out and "treat[ed] him differently from his fellow *Parole Officers*…No other *Parole Officers* similarly situated had ever been subjected to this type of scrutiny before." SAC ¶¶46-47 (emphasis added).

Neither of these allegations refer to similarly situated *sheriff's deputies* or even similarly situated *sheriff's department employees*. Rather, they discuss the treatment of HPA employees, which Pratt was not at the time of the first three events alleged in support of Pratt's sex discrimination claims. Without narrowly parsing how precisely a plaintiff must plead the "similarly situated employee" requirement, the Court finds that describing employees in a different office and different agency with entirely different job duties is not sufficient to plead that similarly situated employees were treated differently from Pratt. *See, e.g.*, *Moran v. Selig,* 447 F.3d 748, 755 (9th Cir. 2006)(affirming summary judgment where district court rejected plaintiff's argument that retired baseball players who had played for a different league were similarly situated to those who played for Major League Baseball).

The Court finds that all three alleged instances of discrimination while Pratt was a Sheriff's Deputy fail to state a prima facie case of sex discrimination

because Pratt does not allege that similarly situated employees were treated differently. As such, the Department's MJOP with respect to Pratt's sex discrimination claim is granted as to these allegations without the need to address the Department's alternative contentions, including res judicata (MJOP at 23-24) and the absence of adverse action (MJOP at 28). Moreover, because the Court has already twice-granted Pratt leave to amend, both while represented by counsel, and only after providing ample guidance as to how to do so (Dkt. No. 33 at 29-38), the Court deems further leave to amend to be futile. *Mayes*, 729 F.2d at 608. Leave to amend is therefore denied.

### 2. *Discrimination at the Hawaiʻi Paroling Authority*

On November 22, 2017, Pratt was given notice that his work performance "did not meet established performance requirements" via a "Notice of Unsatisfactory Performance Letter" from HPA Chairman Hyun. SAC ¶¶39-41. Pratt alleges that he was told he had three months to improve his work performance to a satisfactory level. *Id.* As a result of the Notice, Pratt was required to meet with his supervisor on a weekly basis for 30-40 minutes. *Id.* The Department acknowledges Chairman Hyun sent Pratt the Notice, which stated that Pratt's unsatisfactory performance had been "discussed with [Pratt] in multiple sessions"; that Pratt was placed on a three-month improvement plan; that the Notice was placed in Pratt's personnel file; and that Pratt met weekly with his

supervisor in the presence of Pratt's union representative.  Answer ¶¶23-25.

However, the Department argues that this Notice was not a performance evaluation

at all and that, in any event, it was not undeserved or "final and lasting," and

therefore does not constitute an adverse employment action.  MJOP 30-31.

Title VII provides that it is unlawful for an employer "to discriminate

against any individual with respect to his compensation, terms, conditions, or

privileges of employment." 42 U.S.C. § 2000e–2(a)(1).  The Supreme Court has

held that "this not only covers 'terms' and 'conditions' in the narrow sense, but

'evinces a congressional intent to strike at the entire spectrum of disparate

treatment ... in employment.'" *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S.

75, 78 (1998) (quoting *Meritor,* 477 U.S. at 64).  Nonetheless, the scope of adverse

employment actions in the discrimination context is narrower than with respect to

retaliation.  *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67 (2006).  In

discrimination cases, an adverse employment action must "affect the

compensation, terms, conditions, or privileges" of employment.  *Chuang v.

University of California Davis, Board of Trustees*, 225 F.3d 1115, 1126 (9th Cir.

2000).  It follows, then, that not all forms of negative treatment in the workplace

constitute an adverse employment action.  *See e.g. Hellman v. Weisberg*, 360 F.

App'x 776, 779 (9th Cir. 2009) (social ostracism, threat of termination, and a

reprimand are not adverse employment actions).

There is scant authority on whether a performance review needs to be final to constitute an adverse employment action in a sex discrimination action, with courts within the Ninth Circuit applying disparate standards. *See Fonseca v. Sysco Food Servs. of Az., Inc.,* 374 F.3d 840, 848 (9th Cir. 2004) (reversing summary judgment for defendant in a discrimination case on the basis that a "warning letter still constitutes an adverse employment action" in part because the defendant publicizes all disciplinary actions of its employees); *Cozzi v. County of Marin,* 787 F.Supp.2d 1047, 1061 (N.D. Cal. 2011) (written warning is not an adverse employment action because the letter was not put in employee's personnel file and did not affect terms and conditions of employment); *Grimmett v. Knife River Corp.-Northwest,* 2011 WL 841149, at *9 (D. Or. Mar. 8, 2011) (written warning was not an adverse employment action in a race discrimination case); *Hoang v. Wells Fargo Bank, N.A.,* 724 F.Supp.2d 1094 (D. Or. 2010) (warning letter that did not implement material change in terms and conditions of employment is not by itself adverse employment action.)  What is evident, however, is that whether a negative performance evaluation is an adverse employment action depends on the specific facts of the case.

Here, the Department acknowledges that the Notice informed Pratt that his performance was not satisfactory and that it was placed in Pratt's personnel file, factors that suggest their actions might be considered adverse.  Answer ¶¶21-25.

Indeed, Pratt alleges that his "employer's actions… affected or delayed promotion and/or pay raises…," further suggesting that the Notice was adverse. SAC ¶45.

However, the Notice also gave Pratt three months to improve his performance, indicating that it was neither final nor lasting. More significantly, Pratt's allegations are too threadbare to determine whether the Notice and supervision was *materially* adverse.[5] For instance, nowhere does he describe *how* the Notice delayed his promotion or raises. Moreover, Pratt acknowledges that he was "still learning to perform his basic duties and responsibilities" and that he had "never before worked as a Parole Officer and was brand new at the job," indicating the Notice and supervision may have been deserved. SAC ¶¶35, 37.

In addition, Pratt has not alleged what happened after the three-month period to improve his work performance lapsed in February 2018.[6] Although the Court cannot rely on the Department's assertion and evidence that, after completion of the three-month improvement period, Pratt was recommended for promotion or that his performance rating was eventually listed as "meets expectations" (Answer ¶25), it can take into account that Pratt has failed to assert any further "final or lasting" consequence of the Notice. Pratt, in other words, despite having been

---

[5] The Court cautioned Pratt about this very deficiency in its prior order. *See* Dkt. No. 33 at 35-36.
[6] The improvement period ended in February 2018, two months after the initiation of the instant suit. *See* Compl., Dkt. No. 1. However, since the SAC was filed in December 2018, well after the end of the improvement period, Pratt certainly could have shed light on the outcome. *See* Dkt. No. 34.

provided multiple amendment opportunities that included guidance on what he needed to allege to maintain his claims, has still failed to do so. As pleaded, the Court cannot discern how the Notice was materially adverse, as required by the more stringent adverse action requirement applicable in the discrimination context. The Court therefore cannot find that the Notice was an adverse action within the meaning of *McDonnell Douglas*.

This is further demonstrated by the fact that Pratt's weekly meetings with his supervisor that were the product of the Notice do not amount to an adverse action. Although employer actions that lead to a more burdensome or strenuous workload may be considered adverse actions, a weekly meeting of less than an hour duration, where there is no indication that Pratt was required to make up that hour by staying late or suffered any other collateral consequence, does not rise to the level of "burdensome." *Cf., Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008)(finding adverse action where plaintiff was given more physically demanding work and less varied work than coworkers). Pratt alleges that the meetings were "tantamount to singling him out and treating him differently from his fellow Parole Officers." However, the allegation suggests only that the meetings were inconvenient and perhaps even embarrassing, which the Ninth Circuit has found in either case is insufficient to establish an adverse action. *See, e.g.*, *Hellman v. Weisberg*, 360 F. App'x 776, 779 (9th Cir. 2009)(finding snide remarks, ostracism,

reprimands, or events that spawn rumors that employer wants to fire plaintiff are not adverse actions.).  Pratt has provided no basis for finding that these weekly meetings materially changed the terms or conditions of his employment in the manner required for a sex discrimination claim.

Although unnecessary to consider further, the Court notes that Pratt's allegations as to similarly situated employees at HPA are also insufficient.  Unlike Pratt's allegations regarding discrimination prior to and including his transfer to HPA, Pratt does at least *claim* that similarly situated employees were treated more favorably than he was once he became an HPA employee.  SAC ¶¶37-40.  But Pratt's allegations state only generally that *no other* HPA Parole Officer had been subjected to the scrutiny or onerous meetings that he had been.  This conclusory allegation is not sufficient.  *See Iqbal*, 556 U.S. at 678.  Pratt was required to identify similarly situated employees *in similar positions who possessed similar qualifications, supervisors and  performance deficiencies*.  *See Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 643 (9th Cir. 2003) (as amended January 2, 2004)(finding that similarly situated employees must also have engaged in conduct similar to the plaintiff); *Nicholson v. Hyannis Air Serv., Inc*., 580 F.3d 1116, 1125 (9th Cir. 2009) (plaintiff must identify co-workers who are similarly situated "in all material respects" but who were given preferential treatment; they must "have similar jobs and display similar conduct.").  Since Pratt does not provide such

information, the Court can only surmise that the unnamed Parole Officers to whom Pratt only generally alludes did not join HPA as Parole Officers III without any previous Parole Officer experience as Pratt did and were not supervised by Reinke. Conclusory statements do not suffice, and Pratt has therefore failed to make a prima facie showing that similarly situated employees at HPA were treated differently.

For each of these reasons, DPS' MJOP on Pratt's sex discrimination claim is granted. Because Pratt was given two prior opportunities to amend his Complaint, each while represented, to satisfy the concerns clearly outlined in the Court's two dispositive motion orders issued in 2018, the Court finds that further amendment would be futile. Leave to amend is DENIED.

## CONCLUSION

Pursuant to the foregoing, the Court GRANTS IN PART Defendants' Motion for Judgment on the Pleadings (Dkt. No. 38). Counts I and II of the Second Amended Complaint (Dkt. No. 34) are dismissed, except as to Pratt's

\\\

\\\

retaliation claim arising out of his April 2017 change of title.  Leave to amend is

DENIED.

IT IS SO ORDERED.

DATED: April 9, 2019 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

*Pratt v. State Of Hawaiʻi, Department Of Public Safety,* CIV. NO. 17-00599
DKW-RLP; **ORDER GRANTING IN PART MOTION FOR JUDGMENT ON
THE PLEADINGS**